## TANG TUN *v.* EDSELL, CHINESE INSPECTOR.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 45. Argued November 7, 1911.—Decided March 11, 1912.

Under the acts of August 18, 1894, c. 301, 28 Stat. 372, 390, and of
February 14, 1903, c. 552, 32 Stat. 825, the decision of the question
of citizenship of a Chinese person seeking to enter the United States
is final unless reversed on appeal by the Secretary of Commerce and
Labor; and unless it affirmatively appears that the executive officers
acted unlawfully or improperly, or abused their discretion, their
finding is conclusive and not subject to review by the courts.

In this case it appears that the requirements of the law were satisfied
and there is no ground for judicial intervention.

The decision of an appeal is none the less that of the Secretary of
Commerce and Labor because communicated by the Assistant Secre-
tary, *Hannibal Bridge Co. v. United States,* 221 U. S. 194, by tele-
gram, and later verified by letter.

The fact that a case is quickly decided, in this case two days after its
submission, is not a basis for attack on ground of abuse of discretion
or denial of due process.

Where the District Court takes jurisdiction and proceeds to determine
the merits in a *habeas corpus* proceeding, the respondent can carry
the case to the Circuit Court of Appeals.

168 Fed. Rep. 488; 93 C. C. A. 644, affirmed.

THE facts, which involve the right of a Chinese person
to enter the United States, and whether the inquiry to
determine whether such person should enter was properly
conducted, are stated in the opinion.

*Mr. James A. Kerr,* for petitioners, submitted.

*Mr. Assistant Attorney General Harr* for the United
States.

MR. JUSTICE HUGHES delivered the opinion of the court.

On June 22, 1906, Tang Tun and Leung Kum Wui, his wife, Chinese persons, sought entry to the United States at the port of Sumas, State of Washington, and were denied admission by the inspector in charge, whose order was affirmed by the Secretary of Commerce and Labor. Application was then made to the District Court of the United States for a writ of *habeas corpus.*

It was alleged in the petition that Tang Tun was a citizen of the United States, born in 1879, at Seattle, of parents there domiciled; that, in 1884, he went to China, where he remained thirteen years; that, in 1897, he returned to the United States, was admitted by the collector of customs after examination, entered the employ of Wa Chong & Co., in Seattle, and continued with that firm until 1905, when he returned to China for the purpose of marrying; that he was married to Leung Kum Wui in accordance with the laws of China and the consular requirements of the United States; that the officers concerned had improperly conducted the inquiry and had abused their discretion in refusing admission; and that the petitioners were restrained of their liberty without due process of law.

The writ was granted, and the case having been submitted to the District Court upon the record of the proceedings on the application for entry and the appeal to the Secretary of Commerce and Labor, it was held that the petitioners had been denied the hearing for which the act of Congress provided, that Tang Tun had established his citizenship, and that he and his wife were entitled to remain in this country. Accordingly, both were discharged from custody. 161 Fed. Rep. 618. This decision was reversed by the Circuit Court of Appeals, which reached the conclusion that the requirements of the law had been satisfied and that there was no ground for

judicial intervention. 93 C. C. A. 644; 168 Fed. Rep. 488. This court issued a writ of certiorari.

The acts of August 18, 1894, c. 301 (28 Stat. 372, 390), and of February 14, 1903, c. 552 (32 Stat. 825, 828), make the decision of the appropriate immigration officer final unless reversed on appeal to the Secretary of Commerce and Labor. And if it does not affirmatively appear that the executive officers have acted in some unlawful or improper way and abused their discretion, their finding upon the question of citizenship must be deemed to be conclusive and is not subject to review by the court. *United States* v. *Ju Toy,* 198 U. S. 253; *Chin Yow* v. *United States,* 208 U. S. 8.

It appears from the record that on his arrival, Tang Tun was promptly examined by the inspector at Sumas. The examination was careful and fair. He testified on June 23, 1906, again on June 27, 1906, and still further on July 5, 1906. He had presented, in support of his application, affidavits which he had taken with him for the purpose of identification when he left the United States in 1905. These affidavits described his parentage, his place of birth and his residence in this country substantially as set forth in his petition; and they bore the endorsement of the inspector under date of October 1, 1905. The two white witnesses who had joined in one of the affidavits were examined at Seattle on July 2, 1906, and in the report of the inspector at that place, it is stated that the Chinese witness who made the remaining affidavit of identification had been notified to appear and had informed the inspector that he did not care to testify.

As already noted, the applicant asserted that he had been admitted to the United States in 1897, after examination, by the collector of customs, and a copy of the identification papers he then had was produced, bearing what purported to be the endorsement of the collector as to the fact of admission. The inspector found, however,

that in the records of the customs office at Port Townsend, Washington, the port at which he had arrived in 1897, it was stated that he had been rejected. On his reëxamination, Tang Tun was questioned as to the discrepancy. He was also told that the witnesses who had made the identification affidavits in 1905 had been examined and that their testimony was not satisfactory; and he was asked whether he could furnish any additional testimony as to his nativity. Apparently he had nothing further to submit and the inspector made an order on July 5, 1906, rejecting his application.

On the same day Tang Tun was informed of the inspector's decision and of his right to appeal to the Secretary of Commerce and Labor. An appeal was taken and on July 7, 1906, the applicant's attorney notified the inspector that he intended to take additional testimony. An extension of time was granted for this purpose. Several affidavits were presented on behalf of the applicants, and these were forwarded to the office at Seattle where the witnesses as to disputed points were examined by the inspector. On August 28, 1906, the record of the proceedings, with the exhibits to which we shall presently refer, was forwarded to the Secretary of Commerce and Labor and a brief discussing the evidence and the course of the proceedings was also submitted on behalf of the applicants under date of August 25, 1906. The record was received by the Secretary of Commerce and Labor on the morning of September 5, 1906, and on the afternoon of the following day a telegram was sent from the Department to the inspector at Sumas as follows: "Appeal Tang Tun and Leung Gum Wui dismissed. Murray;" and this was confirmed by a letter from the Department. Then followed the *habeas corpus* proceedings.

It is clear that the applicants had full opportunity to present their evidence and to produce witnesses on their behalf. But it is charged that the inspector who con-

ducted the inquiry was biased, and that his unfairness
is shown by the manner in which he dealt with the question
whether Tang Tun had been admitted by the collector in
1897. We do not find this charge to be justified. When it
was ascertained that Tang Tun had papers bearing, ap-
parently, the endorsement of the collector, and showing
that he had been admitted on his former arrival, it was
certainly permissible for the inspector, if indeed it was not
his duty, to examine the official records of the customs
office to ascertain whatever they might disclose as to the
disposition of the case. On finding that these records con-
tained the statement, over what appeared to be the signa-
ture of the same collector, that Tang Tun had been re-
jected, the inspector properly brought this fact to the
latter's attention, and asked whether he had any explana-
tion to give. No right of the applicants was violated by
the inspector, either in his own action preliminary to the
order of rejection or in his subsequent communication
with the Seattle officers to the end that the matter should
be sifted and the witnesses who had made affidavits in
support of the appeal should be carefully examined.

It is urged, however, that, without the knowledge of the
petitioners and to their serious prejudice, incompetent
statements were injected into the record which was sub-
mitted to the Secretary of Commerce and Labor. The
statements, to which objection was made, had relation to
the evidence presented by Tang Tun to support his asser-
tion that the collector had permitted him to enter in 1897.
From Tang Tun's identification papers it appeared that he
had arrived at Tacoma on April 10, 1897, on the steamer
"Tacoma," and had been admitted April 20, 1897. In the
customs records it was noted that he had been held at
Vancouver, B. C., and rejected on May 25, 1897. In his
additional evidence he presented affidavits of a special
deputy and an inspector of customs under the collector at
the time, in which it was stated by both that it was the

practise not to permit Chinese persons to leave the steamer in which they had arrived until after a decision had been made allowing them to enter the United States, and that if the decision was adverse they were returned to China on the same steamer; and that at no time did they recall any steamer remaining in port from April 10 to May 25. In transmitting the record to the Secretary of Commerce and Labor, the inspector reviewed the case; and, referring to the affidavits submitted for the applicants and the impeachment of the office records, he stated that he had "made a careful examination of the customs records showing the arrivals and clearings of vessels in the district of Puget Sound in April and May, 1897," that "the steamer 'Tacoma' was shown to have arrived at Tacoma on April 10, 1897, and to have cleared for the Orient on April 16," and that furthermore "the said records showed that no other vessel of the same company was in the harbor at the time of the 'Tacoma's' departure, nor until five days" thereafter. The inspector added that in his examination of the Port Townsend customs records "in order to verify or refute the statements" of the witnesses, he had learned that there were two plans, as a rule, for disposing of the cases of Chinese persons; that is, they were either held on the ship until admitted or rejected, or if their cases were not disposed of while the ships were in port they were landed at Victoria, B. C., on the outward trips of the vessels, and remained there until notified of the decision. If this were favorable they would be forwarded on local steamers and admitted, and if adverse, they would be informed accordingly and entries would be made to that effect in the record. He added that his information on this point being at first somewhat uncertain he had verified it by conversations with the members of a Chinese firm who for many years were agents for all oriental steamship lines touching at Seattle, by an investigation conducted at Tacoma, and finally by the testimony (which appeared in the record) of

the witnesses for the applicants, that is, the testimony taken by the inspector after their affidavits had been submitted. In addition, "he found further verification" in the fact that "the Chinese passenger manifests of the Port Townsend office showed that Chinese whose names appeared on arriving manifests of oriental steamers subsequently appear on manifests of local vessels arriving from Victoria and Vancouver," and that a careful examination "of all such local steamer manifests from April 10 to May 25, 1897, fail to reveal the name of Tang Tun on any of them." The inspector also directed the attention of the Secretary to a typewritten list (presented as an exhibit) of the Chinese who had arrived on the steamer "Tacoma" on April 10, 1897, which had been prepared according to the custom prevailing in the office of the collector at that time and had been found in the Port Townsend records. On this list was the name of Tang Tun, identified by reference to his father, with the word "rejected."

Neither the nature of these statements, nor the manner of their introduction, affords ground for invalidating the proceeding. On the examination of the applicants' witnesses—the former customs officials—reference was made in the questions of the examiner to the date of the departure of the steamer "Tacoma" and the inquiry was explicitly directed to the practice of holding Chinese persons at Victoria whose right to enter had not been determined. The point of the inquiry was clearly understood, and not only was there no denial of the practice of detention at Victoria, but the statements of the inspector as to its existence found confirmation in the testimony of the special deputy collector. The list of passengers arriving on the "Tacoma" on April 10, 1897 (being the exhibit to which the inspector referred in his report), was shown to this witness, and he identified the word "rejected" after the name Tang Tun on this list, as being in the collector's handwriting. Both the special deputy and the customs

inspector stated that the signature of the collector on the
original identification papers below the endorsement "Re-
jected May 25/97" was genuine, as they had also testified
that the signature was genuine upon the copy which Tang
Tun had, purporting to show his admission.

And it will be observed that it is not shown that the
statements of the inspector, of which complaint is made,
were false or that there was any attempt to deceive the
Secretary. The writ of *habeas corpus* was granted in
September, 1906. For some reason which the record does
not disclose the case was not brought on for hearing until
January 20, 1908, when an order was made for the taking
of testimony. Then, instead of adducing evidence to
show that these statements of the inspector were false or
misleading, it was stipulated (on February 26, 1908) that
the matter should be heard upon the record, including the
papers which were submitted to the Secretary, and that
the writ should be dismissed if the court, upon this record,
should find that there had been no abuse of discretion.
Had there been ground for saying that the inspector had
misled the Secretary by misrepresenting the records to
which he referred, or by false assertions as to the matters
of fact disclosed by his inquiries, it cannot be doubted
that this would have been shown, as there was abundant
time for full consideration and inquiry. In these circum-
stances, it cannot be said that the inspector in stating the
result of his investigations, in commenting upon the prac-
tice which had obtained in dealing with Chinese applicants
for admission, and in referring to the entries in the official
records, was guilty of unfair or improper conduct.

Complaint is also made of the action of the inspector in
forwarding to the Secretary the papers in the cases of other
Chinese persons who arrived on the steamer "Tacoma"
with Tang Tun on April 10, 1897, some of whom had iden-
tification papers similar to those of Tang Tun with the en-
dorsement of the collector, purporting to show their ad-

mission, in conflict with the office records. The inspector called attention to the fact that in certain cases, after inquiry before the United States Commissioner, and despite the possession of such identification papers, deportation had been ordered, and also that it appeared that all the applicants described in the papers forwarded to the Secretary had been held in British Columbia pending decision. The contents of these papers are not printed in the transcript of record, but we must assume from the description that they were from the official files. Of these the Secretary might at all times take cognizance, and it would be extraordinary indeed to impute bad faith or improper conduct to the executive officers because they examined the records or acquainted themselves with former official action.

But it is said that the evidence for the applicants was of such an indisputable character that their rejection argues the denial of the fair hearing and consideration of their case to which they were entitled. This contention is not supported. It was proved that Tang Tun had lived at Seattle for several years before he left for China in 1905. The question, however, was whether he was born in the United States. Of the witnesses who professed to testify on this point—other than Tang Tun himself—all save one were shown by their examination to be unworthy of credit; and the knowledge of the one trustworthy witness—a police officer of Seattle—was plainly insufficient to make his testimony controlling. This witness relied upon his identification of the youth of about eighteen years of age, who arrived in 1897, as the same person whom he had last seen as a child some thirteen years before. There remained the testimony of Tang Tun himself, but this, with all the other evidence in the case, was for the consideration of the officers to whom Congress had confided the matter for final decision. The record fails to show that their authority was not fairly exercised, that is, consistently with

the fundamental principles of justice embraced within the conception of due process of law. And, this being so, the merits of the case were not open to judicial examination.

The decision of the appeal was not the less that of the Secretary of Commerce and Labor, because communicated by the telegram of Mr. Murray, the assistant secretary (*Hannibal Bridge Co.* v. *United States*, 221 U. S. 194, 206), later verified by letter from the department. The statement of the dismissal of the appeal described the decision against the applicants upon the merits in accordance with the department's usage. Nor does the fact that the case was held under consideration by the department less than two days affect the finality of its determination. Although the proceeding had been long pending the issue was a narrow one and permitted of speedy disposition; and the circumstance that it received immediate attention and the decision was promptly announced is not a basis for attack.

As the District Court took jurisdiction and then proceeded to determine the merits, sustaining Tang Tun's claim of citizenship, the respondent was entitled to carry the entire case to the Circuit Court of Appeals. *United States* v. *Jahn*, 155 U. S. 109; *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, 407; *United States* v. *Ju Toy*, 198 U. S. 253, 259. And the judgment of that court, reversing the decision of the District Court and directing the dismissal of the proceedings, was right.

*Judgment affirmed.*