IN THE MATTER OF THE APPLICATION OF LEE
LEONG FOR A WRIT OF HABEAS CORPUS.

June 2, 1913.

1. *Habeas corpus—Return—Practice:* Attack on the sufficiency of a petition for a writ of habeas corpus should under the settled practice be made by motion to quash or vacate, and not in the return to the writ.

2. *Immigration—Aliens—Birth certificate under S. L. Hawaii, 1911, Act 96 as evidence of citizenship:* The Federal immigration officers are justified in refusing admission to the country to a person of Chinese descent, claiming to be a citizen by virtue of birth in Hawaii and presenting a certificate of the fact of such birth, issued by the Secretary the Territory under Session Laws of Hawaii, 1911, act 96, when circumstances appear which overcome the prima facie effect of such certificate as evidence.

*Habeas corpus*:   On return to writ.
*Andrews & Quarles* and *G. S. Curry* for petitioner.

*C. C. Bitting,* Assistant U. S. Attorney, for respondent.

CLEMONS, J.   A writ of habeas corpus issued on the allegation of the petitioner Lee Leong's unlawful detention in the custody of the respondent, the immigration inspector in charge at the port of Honolulu, for the purpose of deportation, the petitioner being entitled to land as a citizen by virtue of birth in Hawaii on or about the 21st day of January, 1888, of parents then domiciled here and lawfully married, and he being now on his return to Hawaii after having at the age of four years been taken to China by his parents with whom he has since resided there.   The petition for the writ alleged as the basis for the inspector's detention of the petitioner, a mere semblance of a hearing,—an unfair hearing,—in that no consideration was given by the immigration officers to a certificate issued by the Secretary of the Territory of Hawaii under the great seal of the Terri-

tory, dated the 21st day of November, 1912, to the effect that the petitioner was born in Hawaii on the 21st day of January, 1888, and in that no consideration was given to "the uncontradicted evidence of numerous witnesses who testified as to the identity of the petitioner and to his birth in Hawaii." The petition also showed an appeal to the Secretary of Commerce and Labor from the inspector's finding of want of birth in Hawaii, and an affirmance of the inspector's decision and order of deportation.

A return to the writ was sustained on exceptions, because, as it appeared to me, it showed that the respondent held the petitioner by virtue of a determination made by competent authority and duly affirmed; and further because at that stage there was in the respondent's return no admission of the identity of the petitioner with the person named in the birth certificate. The court took occasion, however, to criticise the prolix and repetitious character of both the return and the petition. [1] It may be noted also that the exception to the return for its embodiment of a demurrer to the petition is well taken; for, the writ having issued, any attack on the sufficiency of the petition should have been made by motion to quash or vacate. 21 Cyc. 317; Church, Habeas Corpus, 2d ed., sec. 169. "The return should be responsive to the writ, and not to the petition upon which it is based." Church, Habeas Corpus, 2d ed., sec. 160.

Finally, on a traverse to the return, issues were raised as to the following facts: 1. The petitioner's being of the excluded class of aliens; 2. The abandonment or surrender of his right to enter or reside in the United States; 3. The issuance of the Hawaiian birth certificate; 4. The fairness and impartiality of the hearing; 5. The consideration by the immigration officers of the birth certificate and of uncontradicted evidence in behalf of the petitioner; 6. The rendition of a judgment and determination of the inspector after his admission of further evidence on reopening.

A hearing was then had in which it was shown that the inspector had given consideration to the birth certificate,— which would be presumed in any event (*Ex parte Wing You*, 190 Fed. 294, 297), unless it be for the issue made on that point under the pleadings. But of course the question of law still remained whether the consideration given was due consideration.

At the hearing the fact of the issuance of the certificate and the identity of the petitioner with the person whose photograph is annexed thereto, were admitted by the government. It also appeared that the inspector had ample evidence to establish preliminarily that the petitioner was the son of Chinese parents of the excluded class.

The point of expatriation need not concern us. Even assuming that under the circumstances shown by the evidence the petitioner by remaining away for some years after having reached his majority, impliedly renounced his nationality and allegiance as an American citizen (if he was such), still as the determination of the inspector did not raise any question of expatriation,—did not rest upon any ground of expatriation, but rather on the failure to show birth in Hawaii,—no such question was open here.

It also appeared that the petitioner on appeal had the benefit of the supplementary evidence adduced on rehearing and that although there was no other formal judgment than the original decision, still the memorandum of the inspector, "after consideration of the record I see no reason to change the opinion already formed," reaffirms the former decision or adopts it by reference.

The fairness and impartiality of the hearing on the question of his birth in Hawaii, which includes the question of the consideration given the birth certificate, i. e., its due consideration as a matter of law, is, then, the only point remaining.

The petitioner's essential point was that the certificate of birth was made prima facie evidence of the facts therein

stated, by Session Laws of Hawaii, 1911, act 96, sec. 3, and must be given full faith and credit under Revised Statutes, sec. 906, in spite of which, as he contended, the immigration officers gave no consideration to this certificate and none to the petitioner's witnesses.

But prima facie evidence stands only until overcome by "controlling evidence or discrediting circumstances." *Kelley v. Jackson*, 31 U. S. (6 Pet.) 622, 631-632. And the immigration officers were, in my opinion, at liberty to find from the evidence discrediting circumstances if nothing more.

Assuming the birth certificate to be entitled to credit as prima facie evidence,—though the view of this court seems to have been otherwise in *In re Su Yen Hoon*, 3 U. S. Dist. Ct. Haw. 606, 609, 610, applying a statutory provision similar to that now reenacted in the session laws of 1911,—there were also before the immigration officers matters which they were at liberty in their province as weighers of evidence to regard as casting doubt upon the fact of birth. There was the discrediting circumstance that the petitioner produced before the immigration officers ten witnesses besides himself, offering them as persons who had knowledge of facts which would establish his birth in Hawaii, but whose testimony shows an absence of such knowledge,—testimony, either the barest hearsay, or inconsistent and untrustworthy, or insufficient when pieced together to connect the immigrant with the person born in Hawaii, taken to China at four years of age and now returning. Hereinafter the words "the boy Lee Leong" will indicate the boy born in Hawaii as distinguished from the word "petitioner" which will indicate the petitioner holding the birth certificate on the claim of being the same Lee Leong.

The reports of immigration officer Moore (marked "U. S. Exhibit 1," introduced by petitioner on cross-examination of the inspector, being letters of March 17th and April 2nd, 1913) point out this untrustworthiness in detail.

The witness Lee Yet, a relative of the petitioner (Petition, Exhibit A) and—not a neglible circumstance,—the man who applied for the birth certificate (see Id., and see birth certificate) connected the boy Lee Leong with a person who had an uncle (father's brother) Lee Ming, and who had no child, but the petitioner says that his father had no brother, that he did not know any Lee Ming, and that he himself had a child (Petition, Exhibit A). Lee Yau, who claimed to have known the boy Lee Leong at least since the latter was 4 or 5 years old (Id.) and who saw him often and visited his house often until he was 8 or 9 years old, and who saw the petitioner in 1910 some 13 years afterwards, could not identify the petitioner as the boy Lee Leong. Lee Sau, who claimed to be well acquainted with the boy Lee Leong and with his family and visited them immediately after their arrival in China (in 1892) and again in 1907, and used to teach him, was unknown to the petitioner either by face or name. Lee Lung, who knew the boy Lee Leong from the time of the latter's arrival in China, and who came to Hawaii when the boy Lee Leong was about 9 years old (1897) and was in China again in 1910 and stayed for 9 months in the village of Sun Chin, where the boy Lee Leong is alleged to have resided, was unable to identify the petitioner as the boy Lee Leong. Lee Lau, who testified to seeing the boy Lee Leong in China when the latter was 4 or 5 years old, and who lived in the same village of Sun Chin until 1900 (Petition, Exhibit A), i. e., until the boy Lee Leong was 12 years old, admitted that he never saw the *petitioner* until 1911 (Id.).

It was within the discretion of the immigration officers, who saw the witnesses and observed their demeanor when testifying, to give weight as a discrediting circumstance to the fact that none of the witnesses could identify the petitioner as the boy Lee Leong, although some of the witnesses had known him and his family very well for differ-

.ent periods of time, some short and others longer, and that the petitioner could not identify witnesses who knew the boy Lee Leong (e. g., Lee Keau and Lee Sau, and see Petition, Exhibit A.; U. S. Exhibit 1, letter of April 2, 1913).

When persons who ought to know, and whom the petitioner offers as witnesses who do know that petitioner is who he claims to be, prove not to know the petitioner to be the boy alleged to have been born in Hawaii and who at the age of 4 went to China and to whom the certificate is alleged to apply, that fact certainly may raise a question whether the petitioner, though identified (by admission of the government) as the person whose photograph is annexed to the birth certificate, was really the person who was born in Hawaii and who went to China and for whose birth the certificate is alleged to have issued.   If the petitioner had relied only on the birth certificate and if this certificate must be given prima facie credit as evidence, then of course in the absence of other evidence, it alone would be sufficient to entitle him to land.   But when he offers the certificate and in addition asserts that he was a boy who was born in Hawaii and who at the age of 4 went to Sun Chin village and lived there until the age of 25, and that the certificate applies to that boy, and when he produces witnesses who claim that they had an opportunity to know the boy Lee Leong and his family very intimately there in that small village continuously from 1 year to 8 years, or until the boy was 12 years old, but are shown by their own testimony not to have been able on return visits to China, and not now to be able here to identify the petitioner as that boy, and when the petitioner himself cannot identify some of these witnesses, surely a doubt is cast upon the fact of the petitioner's being the same person as the boy Lee Leong, and so a doubt also upon the certificate which he claimed to apply to that boy and to prove that boy's (and his own) birth in Hawaii.   If the circumstances

above set forth do not directly discredit the certificate itself, they indirectly do the same thing by raising a doubt as to the truth of the fact in issue, the petitioner's birth in Hawaii which the certificate is offered to prove.

Also, a minor circumstance may be noted in the discrepancy of one month between the date of birth as given in the certificate and as claimed by the petitioner in his testimony.

It may not unfairly be said, that a certificate issued, as this was, not until 25 years after the party's birth and upon an ex parte hearing then had, would, even though prima facie evidence, still not be entitled as against other evidence to such weight as, e. g., a certificate based upon a report of birth, marriage or death made contemporaneously by an attending physician or clergyman.

There appear in the record two statements which may be termed "gratuitous" (or at least the second may), but which should have passing notice. First, in the report of officer Moore to the inspector (U. S. Exhibit 1, letter of March 17, 1913), it is stated that "there is no record of the departure of the applicant." This report was not regarded as a part of the record but as in the nature of a memorandum or brief on the case (Tr., pp. 4, 5, 6, 7) and it is not to be presumed that anything in it was considered as evidence either at the original hearing or on the appeal. Though, possibly, under the decision in *Tang Tun v. Edsell,* 223 U. S. 673, 681, it may have been proper to have considered it in any event; the court taking judicial notice that at the time of the alleged departure passenger lists were required to be filed with officers of the Hawaiian government before clearance of vessels. Penal Laws of Hawaii, 1897, sec. 1177, embracing the law in force in 1892. No point, or objection, was made on account of this report by petitioner's counsel in argument at the hearing. Second, the inspector in his testimony at the hearing on traverse to the return, says, "You will find that the people who made

the affidavits are witnesses in the case." This referred clearly enough to the fact that the witnesses who gave testimony before the Secretary of the Territory as a basis for the birth certificate, were witnesses at the hearings before the immigration officers; from which an inference might be justified that the weak testimony, the want of knowledge, of these witnesses here would discredit the certificate founded on their testimony there. But it does not appear, and cannot be presumed that this stated fact was considered by the inspector in reaching his decision, or by the Secretary of Commerce and Labor on the appeal: it was entirely new matter, brought out for the first time at the hearing here. And no point, or objection, was there made on account of it by petitioner's counsel. These two items should not, therefore, be considered in determining the fairness of the proceedings before the immigration officers. They serve only to suggest the question whether, even in spite of any unfairness in the hearing before these officers, the petitioner would be found on a full and fair hearing to be entitled to land. See *Chin Yow v. United States,* 208 U. S. 8, 13.

The writ is discharged and the petitioner remanded to the custody of the respondent.

---

*Affirmed: Lee Leong v. United States,* 217 Fed. 48.