## Ex parte CHEUNG TUNG.

(District Court, W. D. Washington, N. D.   August 30, 1923.)

1. Aliens ☞32(13)—Decision of Secretary of Labor excluding Chinese person held conclusive unless manifestly unfair.

   A petitioner in habeas corpus proceeding, who was denied admission under the Chinese Exclusion Acts when seeking for the first time to enter the United States, is not of right entitled to a trial de novo or a judicial hearing on the merits, but the court is bound by the decision of the Secretary of Labor unless the proceedings were manifestly unfair.

2. Aliens ☞32(9)—Fair hearing in exclusion proceedings held denied, where incompetent testimony given controlling weight, and petitioner's attorney denied permission to examine record.

   A hearing on an application of a Chinese person for admission to the United States was unfair, where the immigration officers totally rejected the direct and positive testimony of petitioner and four other witnesses to the effect that petitioner's alleged father, a citizen, had four sons, because at variance with testimony of another Chinese person taken several years before in another proceeding, and where petitioner's attorney was denied permission to examine the record of such proceeding until after the exclusion of petitioner.

3. Aliens ☞32(8)—Evidence held sufficient to prove that Chinese was son of citizen.

   In a hearing on an application of a Chinese person for admission into the United States, evidence *held* sufficient to prove that petitioner was the son of a Chinese person who was born in the United States, and that therefore petitioner also was a citizen of the United States under Rev. St. § 1993 (Comp. St. § 3947).

4. Aliens ☞32(8)—Status need not be established beyond all doubt.

   On the issue as to the United States citizenship of a Chinese person, a requirement that he establish his citizenship beyond all doubt was a fundamental error in applying the law.

Habeas Corpus.   Petition by Cheung Tung for discharge from custody for deportation.   Petitioner discharged.

John J. Sullivan, of Seattle, Wash., for petitioner.

Thomas P. Revelle, U. S. Atty., and De Wolfe Emory, Asst. U. S. Atty., both of Seattle, Wash.

DIETRICH, District Judge.   Respondent has attached to his return the complete files from the records of the Department of Labor, and by stipulation counsel have submitted the case thereon, subject, however, to petitioner's objection to the consideration, both before the Department and here, of what purports to be the testimony of one Cheung Hung, given in independent proceedings in 1910 at New York, and 1914 at Vancouver, B. C.

The petitioner, Cheung Tung, claims to be the blood son of Cheung Foo, who was born in, and has long been a resident of, the United States.   It was found by the Department, and it is now conceded upon behalf of the government, that by reason of such birth and residence Cheung Foo was at all times herein mentioned, and still is, a citizen of the United States, and that if, as claimed, petitioner is his son, although born and reared in China, he, too, is a citizen (R. S. § 1993 [Comp. St. § 3947]) and as such was entitled to admission.   The one

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

question, therefore, is: Is Cheung Foo the petitioner's father; and touching it there is the further concession that Cheung Foo was absent from this country upon an extended visit to China at such a time as to make possible the alleged paternity.

[1] It is not the case of deporting a resident alleged to belong to an excluded class of aliens, but of denying admission to one who for the first time seeks to enter, and we must therefore look to U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, Tang Tun v. Edsell, 223 U. S. 673, 32 Sup. Ct. 359, 56 L. Ed. 606, and Kwock Jan Fat v. White, 253 U. S. 454, 40 Sup. Ct. 566, 64 L. Ed. 1010, rather than to Ng Fung Ho v. White, 259 U. S. 570, 42 Sup. Ct. 585, 66 L. Ed. 1071, for the measure of and the limitation upon our power to interfere or afford relief. Contrary to petitioner's contention, therefore, he is not of right entitled to a trial de novo here or a judicial hearing upon the merits. In the Kwock Jan Fat Case, supra, it was said:

"It is fully settled that the decision by the Secretary of Labor, of such a question as we have here, is final, and conclusive upon the courts, unless it be shown that the proceedings were 'manifestly unfair,' were 'such as to prevent a fair investigation,' or show 'manifest abuse' of the discretion committed to the executive officers by the statute (Low Wah Suey v. Backus, supra); or that 'their authority was not fairly exercised, that is, consistently with the fundamental principles of justice embraced within the conception of due process of law.' Tang Tun v. Edsell, 223 U. S. 673, 681, 682, 56 L. Ed. 606, 610, 32 Sup. Ct. Rep. 359. The decision must be after a hearing in good faith, however, summary (Chin Yow v. U. S., 208 U. S. 8, 12, 52 L. Ed. 369, 370, 28 Sup. Ct. Rep. 201), and it must find adequate support in the evidence (Zakonaite v. Wolf, 226 U. S. 272, 274, 57 L. Ed. 218, 220, 33 Sup. Ct. Rep. 31)."

[2] But while our jurisdiction is thus strictly limited, I think it broad enough to warrant the relief sought. In the first place I think the use made by the immigration officers of the alleged testimony of Cheung Hung or Kong Hung, to which petitioner excepts, was manifestly unfair and was inconsistent with the fundamental principles of justice embraced in the conception of due process of law. To explain: While under detention, pending investigation of his status, petitioner gave his own testimony at Seattle before a board of special inquiry, composed of three inspectors, and he also asked that the testimony of his father and two brothers, who were on the Atlantic Coast, be taken, and later when advised generally, without specification of reasons or particulars, that the board was not satisfied, he produced another witness, Jung Ming, of Hartford, Conn. Each of these witnesses was examined separate and apart from the others, with no one present, except the inspector, an interpreter, and a stenographer. At no time was petitioner represented by counsel. The government called no witness, but during the examination of petitioner and also of his father certain files were produced purporting to contain the testimony of a person referred to as Cheung Hung, or Kong Hung, one of them bearing date in 1910, and the other in 1914. A younger brother of petitioner's father bears the name Cheung Hung, and assuming that he was the person named in these records the inspector interrogated both petitioner and his father touching certain statements therein at vari-

ance with their testimony. The principal, if not the only, substantial discrepancies are to be found in the record of 1914; the 1910 record being quite immaterial. The petitioner did not personally know his Uncle Cheung Hung, who was born and for the most part lived in the United States. Cheung Foo, petitioner's father, identified a photograph attached to the record of 1910 as that of his brother, but for some reason he was not asked concerning, and in no wise identified, the record of 1914. The latter record purports to relate to one "Kong Hung, alias Cheung Hung, returning native," purporting to have been taken at Vancouver, B. C., on July 31, 1914. This testimony consists of scarcely more than one-half page of typewritten matter, and the following questions and answers give rise to the discrepancies upon which the immigration officials rely:

"Q. Where is your brother Cheung Foo? A. He was in New York when I went to China. Q. Has he a family in China? A. He has a wife and two sons. Q. What are the names and ages of his sons? A. Cheung Gow, 12, and Cheung Ming, 10."

These statements conflict not only with the testimony of Cheung Foo, but also with that of his two sons who were found to be such and accordingly admitted, and that of the petitioner himself and of Jung Ming, all of whom consistently testified that Cheung Foo had four sons corresponding neither in name nor age to the persons named in the Cheung Hung record. Admittedly, too, this testimony of Cheung Hung is quite as inconsistent with the record in the case of Cheung Doo, a son who was admitted, and of Chung Lung, another son who was admitted, as it is with the record here.

When confronted with the alleged testimony of the brothers, Cheung Foo emphatically reasserted the truth of his former testimony that he had four sons, and in effect declared if his brother so testified he did not know what he was talking about. As heretofore stated, he recognized the photograph attached to the record of 1910, but was not shown or asked about this other record. Upon a comparison of the two records it is rather difficult to believe that they both relate to the same person. Putting aside the slight confusion of names, it is still true that the photographs do not seem to be of the same person, there is an apparent want of identity in the signatures, and a want of correspondence in the description by physical marks. Without authentication and without further identification of the deponent, this alleged testimony was treated as a part of the record, and to it was attached controlling importance. Assuming, though not finding, that the deponent was Cheung Foo's brother, and imputing absolute verity to his alleged deposition, the immigration officers rejected the direct and positive testimony of four witnesses to the effect that Cheung Foo had four instead of two sons and that petitioner was one of them. One need only refer to the decision of the Board of Review (set forth in the blue sheets bearing date of May 29, 1923) to see that this nondescript piece of incompetent evidence was given not merely incidental but controlling weight, and that largely if not entirely because of it the petitioner was denied admission.

As heretofore stated, at none of the hearings until after the evidence was closed did the petitioner have the assistance of counsel. While this testimony of Cheung Hung was formally put into the record, the petitioner, ignorant of the course of such proceedings, was not advised and could not have understood that it was to be used in the manner in which it was used. An attorney he apparently had, living in the east; but her request to see the record was expressly denied, and permission to inspect it or learn what it contained was withheld until after the exclusion of the petitioner (see telegrams of February 26 and 28, 1923). In this aspect the case clearly falls within the reason of the rule of Chew Hoy Quong v. White, 249 Fed. 869, 162 C. C. A. 103, where the appellate court of this circuit disapproved a practice no more unjust or prejudicial to the rights of the applicant.

[3] In the second place, apart from the considerations just discussed, fairly weighed, the evidence as a whole overwhelmingly supports the petitioner's contention of his relationship to Cheung Foo. Were the question a material issue in a criminal case, it is quite inconceivable that, even with the rule of reasonable doubt, a jury would hesitate so to find. It would unduly prolong the discussion fully to explain the conditions under which the testimony was taken, but when they are understood it is not strange that some discrepancies are exhibited. But upon the essential features the witnesses, testifying separate and apart one from the other and without assistance or guidance of counsel, are substantially in harmony; indeed, greater harmony would be suggestive of collusion. The testimony was given through interpreters and was transcribed from stenographic notes with no opportunity for correction. That errors were made through inadvertence and misunderstanding is highly probable. In some instances (see, for illustration, testimony of Cheung Foo, pages 22 and 21) upon having his attention called to his statement the witness corrected the error due to misunderstanding. But may there not have been others of like character? If in the instances pointed out the witness had not had the matter drawn to his attention the errors would have been carried forward, and thus we would have had further discrepancies.

[4] For the officers to require more conclusive evidence than the petitioner has furnished is to demand proof beyond all doubt and to a moral certainty, and such a requirement would constitute a fundamental error in the application of the law. In re Wong Toy (D. C.) 278 Fed. 562.

The petitioner will be discharged.