**LUM MAN SING v. ACHESON, Secretary of State.**

Civ. No. 939.

United States District Court,
D. Honolulu, Hawaii, First Division.

Aug. 17, 1951.

Sau Ung Loo Chan, N. W. Y. Char, Honolulu, T. H., for plaintiff.

Howard K. Hoddick, Acting U. S. Atty., Dist. of Hawaii, Honolulu, T. H., for defendant.

METZGER, Chief Judge.

This is the second time that this plaintiff has been before this Court on the question of citizenship. In 1941, he filed a petition for a writ of habeas corpus, which was granted and subsequently dismissed. In that proceeding, the petitioner alleged that, upon his return to Honolulu, Hawaii, after a visit to China, he was denied admission to the United States by a Board of Special Inquiry, composed of immigration officers, and that the order of that board had been sustained by the Department of Justice at Washington, D. C. From the order of this Court dismissing the writ, the petitioner appealed to the then Circuit Court of Appeals for this Circuit, which affirmed the decree of this Court. Lum Mon Sing v. United States, 9 Cir., 124 F.2d 21.

On September 15, 1949, the plaintiff filed the present action, under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903. In this action, the plaintiff prays that he be adjudged to be a citizen and/or national of the United States, entitled to enter and reside in this country.

1. *Statement of Facts.*

In the present proceeding, the plaintiff was the sole witness introduced in his behalf. A summary of his testimony follows:

His names are Lum Man Sing, Lum Sung Yau, and Lum Yau. He was born in Honolulu, on K. S. 26, tenth month, eleventh day, according to the Chinese calendar, or December 2, 1900, American calendar. He knows that he was born in Honolulu because his mother told him and told him the street and date of his birth.

His father's names were Lum Chin Hock and Lum Bung Leong. His mother's name was Lau Shee. Both parents are dead. The father died in the Territory of Hawaii, of "epidemic", on K. S. 28, tenth

month, sixteenth day, Chinese calendar, or November 15, 1902, American reckoning.

The plaintiff went to China with his mother on the Steamship "China" on K. S. 27, eighth month, fifth day (September 17, 1901). He returned to the United States in 1922. At a hearing held upon his arrival at the immigration office in Honolulu, three witnesses identified him and testified as to his birth, and the immigration office admitted him as a citizen. The names of the witnesses were Ng Sau, Lum Choy, Young Suk Chau.

The certificate that the immigration office then issued to him in 1922 was taken from him by that office in 1936, when he desired to make a trip to China. He sought in vain to obtain a "re-entry permit" in 1936. At that time he was under the care of doctors for "sore head".

The plaintiff lived continuously in Honolulu from 1922 to 1937. He made a second trip to China in 1937, without a "re-entry permit" and remained there until 1941, when he returned to the United States. When he arrived at Honolulu, he was held for hearing "until the Japs hit Pearl Harbor". He endeavored to gain liberty by his petition for habeas corpus. Between the time of his arrival and December 7, 1941, he was confined at the immigration station. In 1948, "when the war was over, I was taken back to China".

When the plaintiff returned to China in 1948, he did not go of his free will, but was forced to do so. He did not want to go back to China because "I was a citizen of the United States", and had not the immigration authorities forced him to go, he would have continued to live in Honolulu, where his family resides. His family consists of his wife, Chow Sin Kum, and four children. His wife is an American citizen. Three of the children were born in the United States. The fourth child was born in Hong Kong.

In an effort to return to Honolulu, the plaintiff retained an attorney to see the American consul at Hong Kong, in the hope of obtaining a passport. He also hired a lawyer to bring a "503 action" to enable him to return to the United States.

On cross-examination, the plaintiff was "not quite" able to identify a certificate relating to his father's death and given by him to the immigration authorities in 1936, when he sought a re-entry permit. His father died in 1902, but the plaintiff did not know how old the former was at the time. His father was cremated, so his mother and others told him.

The plaintiff's father had two brothers— Bung Jusp and Bung Suck, both of whom are dead.

The plaintiff's mother had bound feet.

On redirect, he testified that, at the 1941 hearing, he presented two copies of death certificates of his father. He was first told to get a death record, "So I went to the Board of Health and got one. But I was told that was not the one so I was told to get the other one. So I went to the Board of Health and again I secured another one." He did not know whether the two certificates bore the same name or difference names, nor did he remember whether they were returned to him by the immigration authorities.

His mother never returned from China after the trip in 1901. None of the witnesses who testified for him in 1922 are alive.

In connection with the plaintiff's testimony, it should be explained that on September 6, 1950, this Court ordered that a certificate of identification be given to the plaintiff to enable him to return to Honolulu from China "for the limited * * * purpose" of appearing in this action, with the understanding that "if he fails in his proceeding in court, of course he will be deported".

*Defendant's Case.*

The defendant likewise introduced only one witness—one Lum Nan Shing. His testimony may be summarized as follows:

He has been an employee of the Navy Ammunition Depot, on the Island of Oahu, for the past year. He was born in the Terriotry of Hawaii, on K. S. 26, twelfth month, twenty-second day, or, in American reckoning, on February 10, 1901. He was taken to China by his mother in K. S. 27,

eighth month, eighth day (September 20, 1901), on the Steamship "China". His mother is now in China, where she has been ever since she took him there in 1901.

He returned to the United States in June, 1921.

His father was Lum Bung Leong, who died "a long time ago, in the Territory of Hawaii". He died in K. S. 27, seventh month, seventh day (August 20, 1901), or before the witness went back to China.

The witness returned to the United States in 1921. He brought with him three certificates of residence—one for his father, whose name was given therein as Lum Bung Leong, one for his mother, whose name was given as Lam Mau Shee, and one for himself, "by his mother", under the name of Lam Mau Shing.

The witness was able to recognize a copy of his mother's certificate of residence, which was shown to him, from her picture. "I don't know about the words", he said. He added, however, that the copy of the picture that he brought with him in 1921 "was not as new as this one".

The second certificate bore a picture that he identified as a copy of the picture on his certificate of residence that he brought back with him in 1921.

The third certificate of residence shown to the witness bore a picture that he identified as being of his father, and as being a copy of the picture that was attached to his father's certificate of residence which the witness brought back to Honolulu in 1921.

On his return to Honolulu in June, 1921, the witness was given a hearing at the immigration station. The three certificates of residence were taken from him there. Evidently they were afterwards lost.

The witness' left eye bears a white circular mark, or "white spot".

The defendant's purpose in introducing this witness, of course, was to show that it was he, and not the plaintiff, who left Honolulu with his mother on the S. S. "China" in the latter part of September, 1901.

### 2. The Plaintiff Has Sustained the Burden of Proof.

After hearing the plaintiff testify on the stand, this Court has come to the conclusion that he has sustained the burden of proof.

This has been his first day in Court on the general issue of his United States citizenship. The adverse ruling by our appellate court, supra, did not foreclose the plaintiff's right to have the general issue tried in this Court.

In Mah Ying Og v. Clark, D.C.D.C. 1948, 81 F.Supp. 696, 697, affirmed Mah Ying Og v. McGrath, D.C., Cir., 187 F.2d 199, the Court said of the identical section here involved:

"It is clear that the statute contemplates a trial de novo of the issue of citizenship and not merely a review of the administrative action. Consequently, the mere fact that this matter was determined by an administrative agency, and subsequently in a habeas corpus proceeding, does not bar this suit. We must bear in mind that the issues in a habeas corpus proceeding are narrow and do not open wide the entire subject. The Court is merely called upon to determine, in the habeas corpus proceeding, whether there was substantial evidence to sustain the finding of the administrative body and whether the requirements of the law were complied with and the hearing was fair.

"The 1940 statute, however, contemplates a re-opening and a full judicial hearing of the entire issue of citizenship without confining it merely to a review of the administrative action. In a habeas corpus proceeding, the Court might feel that it would have reached a different conclusion than that reached by the administrative agency. Nevertheless, it would be constrained to affirm the action of the administrative agency if there were substantial evidence sustaining such action. In an action for a declaratory judgment under the 1940 Code, however, the Court determines all of the issues de novo."

Accordingly, the District Judge in the above case overruled the Attorney Gen-

eral's motion for a summary judgment. When the action came for trial, at the conclusion of the plaintiff's case, the Attorney General made a motion for judgment on the ground that the court was bound by the judgment rendered in the plaintiff's petition for a writ of habeas corpus filed ten years before. Of this contention, the appellate court said: "This court supports the views expressed by the District Court when it overruled the first motion of appellee for summary judgment". 187 F.2d at page 201.

See also Gan Seow Tung v. Clark, D.C. Cal., 83 F.Supp. 482, 484–485; United States ex rel. Vajta v. Watkins, D.C.N.Y., 88 F.Supp. 51, 54, affirmed, 2 Cir., 179 F.2d 137.

It may readily be conceded that the testimony of Lum Man Shing, the witness for the Government, tended to contradict the plaintiff's claim that it was he who sailed on the S. S. "China" with his mother on September 17, 1901. The Government's witness, incidentally, fixes the date of the steamship's departure from Honolulu as September 20, 1901. After listening to both witnesses, however, I have arrived at the conclusion that the plaintiff's version is the more credible, and convinces me that he was born in Hawaii.

In Leong Kwai Yim v. U. S., 9 Cir., 31 F.2d 738, 739, the Government contended that there were *thirteen* persons of Chinese descent admitted to this Territory, each representing himself to be one or the other of two children who returned to China with their parents on a certain date. But even in that case, our appellate court favored the view that the appellant "should not be deported because of the numerous frauds thus perpetrated by others", although the Court did advise that in such a case the record should be scrutinized with the utmost care.

In this connection, it might be pointed out that, in the case of Lum Man Shing v. United States, 9 Cir., 29 F.2d 500, our appellate court reversed an order of deportation against an individual bearing the identical name of the defendant's sole witness herein.

Finally, it should be borne in mind that the obligation of immigration officials "is as mandatory to establish citizenship, if it exist, as it is to deport the alien". Lau Hu Yuen v. United States, 9 Cir., 85 F.2d 327, 331.

In Chun Kock Quon v. Proctor, 9 Cir., 92 F.2d 326, 327, Judge Denman pointed out that "The fundamental principles controlling the deliberations and determination of the immigration officials and the Secretary in an exclusion case are held, in an opinion of Mr. Justice Hughes, to be 'the fundamental principles of justice embraced within the conception of due process of law'," quoting from Tang Tun v. Edsell, 223 U.S. 673, 682, 32 S.Ct. 359, 56 L.Ed. 606.

In the Chun Kock Quon case, supra, Judge Denman quoted the ringing language of Mr. Justice Clarke in Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010. "The acts of Congress give great power to the Secretary of Labor over Chinese immigrants and persons of Chinese descent. It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power. * * * *It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country."* (The italics are Judge Denman's).

3. *Conclusion.*

After carefully weighing the testimony of the two witnesses who testified at the trial, as well as after examining the documentary evidence adduced herein, the Court is of the opinion that the plaintiff has sustained the burden of proof.

Accordingly, the plaintiff is adjudged to be a citizen of the United States, with all the rights and privileges thereunto appertaining.