**AVINA v. BROWNELL, Atty. Gen.**
**Clv. A. No. 640.**

United States District Court
S. D. Texas, Laredo Division.
April 15, 1953.

John Noyola, George Byfield, Laredo, Tex., for plaintiff.

Brian S. Odem, U. S. Atty., J. Lev Hunt, Asst. U. S. Atty., Houston, Tex., for defendant.

ALLRED, District Judge.

Claiming to be a citizen of the United States, plaintiff was granted leave to file this action upon an affidavit in forma pauperis, for a declaration of his status as such under 8 U.S.C.A. § 903. It was filed on January 19, 1953, erroneously naming James P. McGranery, Attorney General, as "Francis" P. McGranery. Mr. McGranery retired on January 20, 1953, and plaintiff's motion to substitute Herbert Brownell as defendant will be granted.

Plaintiff alleged that he was born June 11, 1924, in San Bernardino, California, and was taken by his parents to Mexico in 1936, where he has resided since (in the state of Guanahuato); that he is a citizen of the United States by birth and has never done or performed any act to expatriate himself, but defendant contends he has lost his citizenship by departing from the United States and remaining absent for the purpose of avoiding training and service in the armed forces during time of war or other emergency, as provided by section 401(j) of the Nationality Act of 1940, all of which plaintiff denies.

Subsequently, and before answer by defendant, plaintiff sought to amend by asking leave to file an application for a writ of habeas corpus under the "Immigration and Nationality Act" of June 27, 1952 (commonly referred to as the "McCarran Act), pleading, in addition to the foregoing, that: on September 15, 1951, he applied for admission at Laredo, Texas; that a Board of Special Inquiry rendered a decision in November 1951, that plaintiff had forfeited his citizenship under section 401(j) of the Nationality Act of 1940; that the Board of Immigration Appeals at Washington, D.C., affirmed this decision; that defendant has deprived plaintiff of his constitutional rights as a United States citizen; that he desires to appear in person and by his counsel before the court in order that his claim to citizenship may be determined by due process of law; that defendant illegally and without due process, denies plaintiff the right to enter and is restraining him from entering the United States to confer with his counsel and to appear before the court for an adjudication of his claimed citizenship.

Plaintiff prays for the issuance of a writ of habeas corpus and that the court require defendant to permit him to enter and remain in the United States, under his own recognizance, to confer with counsel and appear before the court until the claim is finally determined.

Defendant moves to dismiss on the ground that plaintiff has not exhausted his remedies under section 1503(c) of Title 8 (the "Immigration and Nationality Act"); and that proper service has not been obtained either on the Attorney General or other indispensable parties to this action.

It is not necessary to discuss the question of service in view of my conclusion, reluctantly arrived at, that the action must be dismissed because of plaintiff's failure to exhaust his administrative remedies. As plaintiff points out, it seems unjust to compel him to exhaust the new, and more onerous procedure, hereafter discussed, and secure another administrative finding that he has lost his citizenship before he can come into court. Plaintiff argues that, as applied to him, this would be an unconstitutional deprivation of his rights and citizenship. But Congress constitutionally can change a remedy;[1] and, strange as it may seem, under the authorities, delegate to executive authority the power to determine that an American citizen has lost his citizenship.

8 U.S.C.A. § 903, a part of the Nationality Act of October 14, 1940, was repealed by the Act of June 27, 1952 (the "Immigra-

---

1. Barber v. Yanish, 9 Cir., 196 F.2d 53, 54, footnote 1, and authorities therein cited.

tion and Nationality Act"), 8 U.S.C.A. § 1101 et seq., effective December 24, 1952. Under the former law any person claiming to be a national of the United States, whose rights as such were denied by any Governmental department, agency or executive official, could institute an action, in the District Court in which he claimed a permanent residence, for judgment declaring him to be a national of the United States. If such person was outside the United States upon submission of a sworn application showing good faith and substantial basis for the claim, he could obtain from a United States diplomatic or consular officer a certificate of identity and be admitted to the United States pending outcome of the action. It was expressly provided that such certificate of identity should not be denied *solely* on the ground that such person had lost his status as a national of the United States. Provision was made for an appeal to the Secretary of State from denial of an application for such certificate of identity.

The procedure was changed radically by the "Immigration and Nationality Act". Section 1503(a) of Title 8, authorizes, with certain exceptions, an action for declaratory judgment, under 28 U.S.C.A. § 2201, by a person claiming citizenship, who is *in the United States.* Section 1503(b), dealing with such a person *not within the United States,* provides for securing a consular certificate of identity "for the purpose of traveling to a port of entry in the United States and applying for admission." Proof, "to the satisfaction" of such consular officer, of good faith and substantial basis for the claim is required; appeal lies to the Secretary of State from a refusal of such certificate. These provisions are "applicable only to a person who at some time prior to his application for the certificate of identity has been *physically present* in the United States, or to a person under sixteen years of age who was born abroad of a United States citizen parent." (Emphasis supplied.) The provision in the old act, prohibiting denial of the certificate *solely* on the ground that nationality has been lost, is omitted from the present law.

Section 1503(c) of Title 8 provides that a person *who has secured a certificate of identity* under the foregoing subsection (b) "may apply for admission * * * at any port of entry, and shall be subject to all the provisions of this chapter relating to the conduct of proceedings involving aliens seeking admission to the United States. A *final determination by the Attorney General* that any such person is not entitled to admission to the United States shall be subject to *review* by any court of competent jurisdiction in *habeas corpus proceedings and not otherwise.* * * *" (Emphasis supplied.)

Summarized, the differences between the old and the new law are: (1) formerly a declaratory judgment action might be brought by a national, whose rights had been denied, whether such person was in the United States or out of it; now such an action can be brought only by a national *within the United States;* (2) formerly, a national without the United States could secure a certificate of identity from a diplomatic or consular officer, entitling him to be admitted pending outcome of his declaratory judgment action; now it only entitles the holder *to apply for admission* at a port of entry where the same proceedings must be had as with *aliens seeking admission;* (3) formerly, the diplomatic or consular officer could not refuse to issue the certificate *solely* on the ground that the national had lost his status; now, apparently, the certificate *can* be denied solely on that ground; (4) formerly, the action could be brought when the right of a national (without the United States) was denied by a governmental department, agency or executive official without exhausting administrative remedies, such as appeal, etc.;[2] now such a person must exhaust his remedies to a final determination by the Attorney General; (5) when that is done, the Attorney General's adverse decision is "subject to *review* by any court of competent jurisdiction in *habeas corpus* proceedings and not

---

2. Wong Wing Foo v. McGrath, 9 Cir., 196 F.2d 120, holding that section 903 authorized an independent action, not a "re-

view trial de novo" which had to await action by the Board of Immigration Appeals.

otherwise;" and, (6) apparently a person who has not been able to secure a certificate of identity may not bring any kind of action to establish his citizenship.

■ These are, indeed, heavy burdens placed on nationals without the United States by the new act. Apparently, Congress intentionally wiped out the wholesome provisions of section 903 (enacted in 1940) for a *judicial* determination of the priceless right of citizenship and reverted to the idea of an *administrative* determination of that heritage, subject to judicial "review" only on habeas corpus. This had been held constitutional in United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040, Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369 and Tang Tun v. Edsell, 223 U.S. 673, 32 S.Ct. 359, 56 L.Ed. 606.

In the Ju Toy case an act of August 18, 1894, provided that an order by the immigration officers excluding an alien should be final. Ju Toy brought a habeas corpus proceeding alleging, and the trial court found, that he was *a native born citizen* of the United States. The immigration officers had found that Ju Toy was not born in the United States and, on appeal, the finding and order of exclusion had been sustained by the Secretary of Commerce and Labor. Speaking for the Court, Mr. Justice Holmes held that: (a) due process did not necessarily require a judicial trial of the issue of birth and Congress could entrust the decision to an administrative officer; and (b) in the absence of clear allegations and proof of an abuse of discretion, the order was final and not subject to review by the courts. In a dissenting opinion by Justices Brewer and Peckham, the terrible implications and consequences of that holding are set out.

In Ng Fung Ho v. White, 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938, the Court held that a person, *resident in the United States,* who claims to be a citizen is entitled to a judicial determination of his citizenship and may not be deported by executive order; but that one *without the borders* of the United States, seeking entry as a citizen, is not entitled to a judicial determination of that question, citing United States v. Ju Toy and Tang Tun v. Edsell, supra.

■ It appears, therefore, that, in enacting the "Immigration and Nationality Act" of 1952, Congress acted in light of the foregoing decisions and carefully sought to fix it so that a *non-resident.* claiming to be a citizen, must first exhaust his administrative remedies and then possibly be bound by an executive finding that he had lost his birthright, unless he alleges and proves abuse of discretion. While a final adverse decision is subject to judicial "review," it can be had "in habeas corpus proceedings and *not* otherwise." This is a peculiar choice of words.[3]

---

3. While not necessary to a decision here, the question will undoubtedly arise hereafter: Did Congress intend to grant the scope of review provided by section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, or review only upon allegations and proof of abuse or arbitrary executive action required under the decisions discussed above? Section 10(b) of the Administrative Procedure Act provides: "(b) The form of proceeding for judicial review shall be *any special statutory * * * proceeding* relevant to the subject matter in any court *specified by statute* or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. * * *" (Emphasis supplied.)

Habeas Corpus is the special statutory proceeding specified by statute for review of administrative findings that a citizen has lost his status as such. But is the "review" by habeas corpus, which is provided by the statute, the traditional review only upon a showing of abuse, as in the cases above referred to, or the broader scope of review provided in the Administrative Procedure Act? For, under section 1503(c) of the new "Immigration and Nationality Act", the erstwhile citizen, *upon applying for admission to the United States,* is "subject to all the provisions of this chapter relating to the conduct of proceedings involving *aliens seeking admission* to the United States." And by an Act of Sep-

■ As pointed out by plaintiff, if defendant's motion is granted, plaintiff will have to retrace his steps before he can have even a judicial "review." He will have to apply to a consular or diplomatic officer for a certificate of identity and proffer proof "to the satisfaction of such * * * officer" of good faith and substantial basis for his claim. If his application is denied, he must appeal to the Secretary of State.[4] If plaintiff is able to secure a certificate of identity, he must then apply for admission at a port of entry, be proceeded with as an *alien seeking admission* and exhaust his remedies by a final adverse decision by the Attorney General before he is entitled to *review* by habeas corpus, where he may have to plead and prove that the denial of his alleged citizenship is arbitrary. United States v. Ju Toy, supra.

But, as stated, Congress may change a remedy without violation of due process. That is what Congress has done here, whatever may be the Court's opinion as to the wisdom of delegating to an immigration board the right to determine, without a jury and the usual safeguards of a court trial, that a citizen has forfeited his right as such. As to any right arising after the effective date of the "Immigration and Nationality Act", that act controls.

■ It might be argued that plaintiff's rights arose before December 24, 1952, and were preserved by the savings clause in the act itself.

Section 405 of the Act of June 27, 1952, 8 U.S.C.A. § 1101 note, provided in part that:

"(a) Nothing contained in this Act (this chapter), unless otherwise specifically provided therein, shall be construed * * * to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any *status,* condition, *right in process of acquisition,* act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act (this chapter) shall take effect; but as to all such prosecutions, suits, actions, proceedings, *statutes,* [sic] *conditions, rights,* acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act (this chapter) are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *

"(c) Except as otherwise specifically provided in this Act (this chapter), the repeal of any statute by this Act shall not terminate nationality heretofore lawfully acquired nor restore nationality heretofore lost under any law of the United States or any treaty * * *."

Plaintiff had a right to bring a declaratory judgment action in this court when his right to enter the country as a national first was denied by the immigration authorities in September, 1951.[5] But the right actually was only as to *remedy* which Con-

tember 27, 1950, P.L. 843, 81st Cong., 2nd Sess., 64 Stat. 1048, it was provided: "Proceedings under law relating to the *exclusion* or expulsion of aliens shall * * * be without regard to the provisions of sections 5, 7, and 8, of the Administrative Procedure Act (5 U.S.C. 1004, 1006, 1007)." Traditionally, in all exclusion and deportation cases, the validity of administrative orders could only be attacked on habeas corpus, not by direct attack. Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603.

**4.** No provision is made in the statute for review of a refusal of a certificate of identity by the Secretary. Although some doubt has been expressed as to the power of a court to mandamus the Secre-

tary of State, Yee Gwing Mee v. Acheson, D.C.Cal., 108 F.Supp. 502, I have no doubt that the court could compel the issuance of a certificate of identity in case of arbitrary or capricious refusal, Eng v. Acheson, D.C.N.Y., 108 F.Supp. 682; Look Yun Lin v. Acheson, D.C. Cal., 95 F.Supp. 583; and, in a proper case, I think the court has an inherent power to direct that a national be permitted to enter the country to be present while his action is being tried in court. Cf. Acheson v. Nobuo Ishimaru, 9 Cir., 185 F.2d 547.

**5.** Wong Wing Foo v. McGrath, footnote 2, supra. Cf. United States ex rel. Yaris, v. Esperdy, 2d Cir., 202 F.2d 109.

gress had the power to change. I do not believe it amounted to a vested right, covered by the quoted savings clause.[6]

Defendant's motion to dismiss will be granted. Defendant's counsel will submit an order accordingly within 10 days.

The Clerk will notify counsel.

6. In the quarterly report of the Director of the Administrative Office of the United States Courts (2nd Quarter, Fiscal Year Ending June 30, 1953), special mention is made of actions brought under old section 903 of Title 8, as follows: "Proceedings asking for a declaration of United States nationality, brought before December 24, 1952 in order to beat the effective date of the McCarran Act, which made some changes with respect to this right of action, rose by over a thousand to 1,256 and were filed mainly in the Second and Ninth Circuits."