SIU SAY v. NAGLE, Commissioner of Immigration for the Port of San Francisco.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1924.)

No. 4103.

Aliens ☞32(8)—Evidence held to warrant exclusion of Chinese applicant.

> The exclusion of a Chinese applicant for admission as the son of a domiciled merchant, on the ground that the relationship was not established, *held* not an abuse of discretion, where the testimony of applicant and his claimed relatives differed materially as to collateral facts relating to the family, which all should have known.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; William Van Fleet, Judge.

Petition by Siu Say against John D. Nagle, Commissioner of Immigration for the Port of San Francisco, for writ of habeas corpus. From a judgment denying the writ, petitioner appeals. Affirmed.

Joseph P. Fallon, of San Francisco, Cal., for appellant.

John T. Williams, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. On the 19th day of April, 1923, Sui Mooy Chew applied to enter the United States at the port of San Francisco as the minor son of Siu Say, a domiciled Chinese merchant. The status of the alleged father is not questioned, but the Commissioner of Immigration denied the right of entry upon the ground that the relationship had not been established. This decision was affirmed on appeal by the Secretary of Labor, and a writ of habeas corpus was thereupon applied for, upon the ground that the testimony in support of the right of entry was of so conclusive a character that it was an abuse of discretion to detain or exclude the applicant. By stipulation of the parties the record before the department was made a part of the petition. A demurrer to the petition was sustained, and the petition denied. From that order the present appeal has been prosecuted.

In cases of this character experience has demonstrated that the testimony of the parties in interest as to the mere fact of relationship cannot be safely accepted or relied upon. Resort is therefore had to collateral facts for corroboration or the reverse. If the witnesses are in accord as to a number of collateral facts which they should know if the claimed relationship exists, and probably would not know if the claim of relationship did not exist, there is at least a reasonable probability that the testimony is true. If, on the other hand, the witnesses disagree as to collateral facts which they should or would know if the claimed relationship exists, especially such an important fact as membership in the immediate family of the parties, there is a strong probability that the claim of relationship is false and fraudulent. As said by the court in The Santissima Trinidad, 7 Wheat. 283–337 (5 L. Ed. 454):

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"If the circumstances respecting which the testimony is discordant, be immaterial, and of such a nature that mistakes may easily exist, and be accounted for in a manner consistent with the utmost good faith and probability, there is much reason for indulging the belief, that the discrepancies arise from the infirmity of the human mind, rather than from deliberate error. But where the party speaks to a fact in respect to which he cannot be presumed liable to mistake, as in relation to the country of his birth, or his being in a vessel on a particular voyage, or living in a particular place, if the fact turn out otherwise it is extremely difficult to exempt him from the charge of deliberate falsehood'; and courts of justice, under such circumstances, are bound, upon principles of law, and morality and justice, to apply the maxim 'falsus in uno falsus in omnibus.' "

Such was the situation presented here. An alleged brother of the present applicant was admitted to the United States in 1917. Both the alleged brother and the alleged father testified in support of the right of entry on that occasion, and both were witnesses at the present hearing. There are important unexplained discrepancies in the testimony of these two witnesses as given at the different hearings some five years apart. At the 1917 hearing both testified that the paternal grandmother of the then applicant was still living, but they differed as to her age. At the present hearing both testified that the same paternal grandmother died prior to the former hearing. Again the present applicant testified that his paternal grandmother is still living in China. He further testified on the first hearing that his father had one brother but no sisters. At a later hearing he testified that his father had a sister, and the only reason assigned for the change in his testimony was the fact that he knew he had made a mistake, or was wrong after he gave his first testimony, but was afraid to change or correct it.

Under circumstances such as these it is at once apparent that the department did not abuse its discretion in finding that the claimed relationship had not been satisfactorily established. Apparently a request was made that the hearing on the question of relationship be had at Angel Island, instead of Suisun, and in his report the examining inspector expressed the belief that this request was made so that the witness or witnesses might be coached. Because of this report it is now claimed that the inspector was prejudiced against the applicant and that the hearing was therefore unfair. But this conclusion does not follow. Admittedly there was a change in the testimony, and, whether the inference drawn by the inspector was warranted or unwarranted, it does not follow that the inspector was prejudiced or the hearing unfair.

The order is therefore affirmed.