## YEE MON v. WEEDIN, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit.
August 12, 1929.

No. 5735.

Hugh C. Todd, of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., and Paul D. Coles and Tom De Wolfe, Asst. U. S. Attys., all of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

WILBUR, Circuit Judge. The appellant claims admission to this country as an American citizen born in China by reason of the American citizenship of his father. He was denied the right to enter the United States by the immigration authorities, and his petition for a writ of habeas corpus was denied by the United States District Court, and he appeals from that order. The sole question on this appeal is as to whether the immigration authorities flagrantly disregarded the rights of the appellant in rejecting the testimony of the father and of the son and two brothers as to their relationship because of alleged discrepancies in the evidence. The petition for release on habeas corpus was denied by the District Court, and Yee Mon appeals.

The citizenship of the alleged father, Yee Ngoey, is conceded, and he has made several trips to China and was readmitted to the United States on each occasion as a citizen. He was in China at a time to make possible the paternity in this case, for in record No. 1450—10/11, on June 1, 1915, on board the steamship Magnolia, just before he was landed, the father is recorded in the immigration record as stating that he had a son in China named Yee Moon, 2 years of age (Chinese calendar). The present applicant was born in 1914, and when he applied for admission at the port of Seattle, he was only 14 years old. In the same record, on November 12, 1919, the father again testified that he had a son in China named Yee Moon, 6 years old.

In record No. 2300—2442, on board the steamship Prince Arthur, July 13, 1922, the father testified he had a son Yee Moon, aged 9 years.

In record No. 11249—88, on page 3, in December, 1916, the father testified he had a third son, Yee Moon, 3 years old.

In record No. 8866—9/18, on October 2, 1924, the father stated he had a third son named Yee Moon.

In record No. 2400—5147, in the year 1922, the father testified he had a son named Yee Mon. Thus, on six different examinations, in addition to the present applicant's examination in 1928, the father, in 1915, when the boy was 2 years old, Chinese calendar, in the year 1916, in the year 1919, and twice in the year 1924, stated he had a son named Yee Mon.

In the year 1922, the petitioner's alleged father brought to the United States his two older sons, named Yee Sang and Yee Toy, and they were landed at Boston, according to record 2500—5147. The two prior landed sons in 1922 then stated that they had a brother in China named Yee Moon, and said two prior landed sons, who are now residing with their father in Cleveland, Ohio, were examined this year in Cleveland and identified a photograph of the present applicant as their brother Yee Moon.

In order to corroborate this identification of the petitioner's father and his prior landed brothers, the petitioner in turn identified the photographs of his father and the photograph of Yee Sang and Yee Toy, the two prior landed sons, as his brothers.

The evidence as to the existence of a son of Yee Ngoey named Yee Mon, aged about 14 years, is thus established by a line of evidence extending over almost his entire existence.

As to whether or not the applicant is that son depends upon the testimony of the father and his two prior landed sons and the applicant, all of whom identify Yee Mon as the third son of Yee Ngoey.

In rejecting the claim of the applicant,

Yee Mon, to admission, the immigration authorities relied on certain discrepancies in the testimony at the time of the examination of Yee Mon and his witnesses for entry. One of the discrepancies is as to the appellant's birthday. (1) On June 1, 1915, the father stated that he had a third son born C. R. 3–9–2; in Boston, Mass., he gave C. R. 3–7–7. These Chinese dates are said to be October 20, 1914, and August 27, 1914, respectively.

There were other discrepancies thus stated by appellee:

"(2) The appellant states that Seung Wan Village, where his older brothers were born, is about 1 or 2 lis east of his village (approximately 5 to 10 city blocks), while the alleged father states that this village is a little over 1 poo (over three miles) west of his village.

"(3) The appellant states that his father is the owner of a piece of rice land, while the alleged father claims that he owns no rice land and never did own any.

"(4) The appellant states that there is no ancestral hall near his village, while the alleged father claims that the Sin Deung ancestral hall is located only about ½ li (2 to 3 city blocks) west of his village.

"(5) The alleged father states that about 2 years ago, a new house was built by Ju Lung in the 4th or 5th row of their village, the location of said house being in the next row to that in which the alleged father and appellant claim to have lived. The appellant has no knowledge regarding the erection of this house, and states that he has no recollection of any new residences or other buildings ever having been built in his village. Later, however, he stated that a man named Yuk Kui had built a house several years ago. The appellant states that this Yuk Kui's house is opposite the small door of his house, and that Yuk Kui's other name is Lai Cui. The alleged father states that this man's other name is Tung Gun.

"(6) The appellant at first testified that he had never seen either of his elder brothers, for the reason that, before coming to the United States, they had lived in the Seung Wan village, where they were born, while he himself was born in Wai Lung Lee village and had always lived there. He further stated that the said brothers had never lived in the Wai Lung Lee village; also that he did not know whether or not these brothers ever attended school. This testimony was given in the forenoon. When his examination was resumed after the noon recess, the appellant made the statement that his brother, Yee Sang, would testify in his behalf, and claimed that his previous testimony regarding his brothers, Yee Sang and Yee Toy, was a mistake; that he had thought the matter over and then remembered that he had seen those two brothers and that both had slept in the same house with him in the Wai Lung Lee village. He also claimed to remember that they had slept in the large doorside of his house, which was the taller of the two brothers, what time in the day they had started from the home village with their father for this country, and that their destination was Cleveland at that time.

"(7) The appellant also stated that his brother, Yee Jung, had attended school from the time he was 9 until he was 14, and that he and Yee Jung had attended school together. The alleged father testified that Yee Jung had never attended school for the reason that he was too young.

After an examination of the entire record submitted to us, the only point requiring serious consideration is that numbered 6 above. From the records it appears from a uniform line of testimony covering over 20 years, taken at intervals concerning the family of Yee Ngoey, the alleged father, and of his two brothers, and later of his two sons, Yee Sang and Yee Toy, the family of Yee Ngoey moved from the Seung Wan village shortly after the birth of the second son, Yee Toy, and have lived there ever since; that the three sons lived together in the village of Wai Lung Lee from the birth of Yee Mon until 1922 when the older sons came to the United States. Such was the testimony of the alleged father and of his two prior admitted sons. The above-stated testimony of the applicant would tend to show that he did not live with the family of Yee Ngoey during the period mentioned and consequently that he is not the son of Yee Ngoey. There may be some other explanation of this startling discrepancy, but that question is for the immigration authorities. There was no denial of due process of law in the decision of the court.

Order affirmed.