· LIM WUN v. NAGLE, Immigration Com'r.

No. 6404.

Circuit Court of Appeals, Ninth Circuit.

Sept. 14, 1931.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and I. M. Peckham, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and NETERER, District Judge.

WILBUR, Circuit Judge.

The appellant claims the right to admission into this country as the Chinese-born son of Lim Chek, who is conceded to be an American citizen. He was denied admission by a board of special inquiry at San Francisco on the ground that he had not established satisfactorily that he is the son of the alleged father. It is claimed by applicant that the evidence adduced before the immigration authorities established to a reasonable certainty that he was the son of his alleged father and that in denying the existence of the claimed relationship these authorities acted arbitrarily and unfairly. His petition for a writ of habeas corpus was denied by the United States District Court, and he appeals from that order.

Appellant arrived in the Port of San Francisco on July 9, 1930, at which time he was nine years and six months old. The alleged father has made several trips to China and claims to have been married in China in September, 1891, to Lew Shee; he claims to have become the father of three sons and one daughter; one son Lim Chee, who was born December 1, 1892, first came to the United States on February 4, 1920, returned to China in November, 1928, and again came to the United States with appellant in July, 1930. The second son, Lim Gock, who was born on July 12, 1897, first came to the United States in October, 1916, and thereafter made one trip to China, departing in December, 1917, and returning in November, 1919. The daughter, Lim Yee, was born in December, 1907. The appellant is claimed to be the third son. The alleged father was in China from December, 1917, to September,

1920, at a time to render possible his paternity of a child of appellant's age.

The alleged father was in China last in 1920. He arrived at the port of entry in September of that year, and according to the evidence the applicant was born January 12, 1921. At the time of his entry he must have known that his wife was expecting a child to be born in January, if that were a fact. He does not mention this expectation. It is true that he was not directly asked the question as far as the records show, but his familiarity with the difficulty of gaining entry to this country and the difficulties he had already experienced in landing his son would seem to point out to him clearly the desirability of such a statement. It should be noted also that at that time the wife was nearly forty-eight years of age.

The father had never seen his son until he arrived at the port of entry, and his testimony identifying the son is based entirely upon the resemblance of the boy to pictures purporting to be his son which he claims were sent to him by his wife at the time he was making preparation for the entry of this boy in 1928. The alleged brother who brought the applicant to this country was not in the home at the time of the birth of the applicant, arriving there for the first time when the boy was about seven years old. The effect of his testimony therefore is that the applicant lived in the home of the alleged father and was recognized by the alleged father's wife as her son during that period. Undoubtedly the evidence of the father and alleged brother, if given full credit, would establish the paternity of the applicant. After careful examination, however, the immigration authorities rejected the testimony of the applicant on the ground that certain discrepancies existed between the testimony of the applicant and of his alleged brother and father. This testimony related to the location of the house in which it is claimed the applicant resided with his mother. It is true that a child of that age might make a mistake as to the number of rows of houses in the village, also as to the number of houses therein, and as to the relative location of the house with reference to the ancestral hall in the village; but there was a definite discrepancy in the testimony which immigration authorities, after careful consideration and giving due consideration to the youth of the applicant, determine to be an element in the rejection of the testimony given on behalf of the applicant. There was also a flat disagreement in the statement of the applicant and of his brother with rela-

tion to the visit of applicant and his brother to the Luk Poo Market, with reference to who accompanied the applicant and his brother when he visited the ancestral graves, and with reference to those who accompanied them to the boat landing when they left their native village; the brother testifying that four of applicant's nephews accompanied them; the applicant stating that none accompanied them.

The discrepancies relied upon by the Secretary of Labor in his decision are set out at length in his opinion, which covers nearly three pages of the transcript. It would unduly extend this opinion to further elaborate the discrepancies. It is sufficient to say we find no evidence of an arbitrary and unfair determination of the matter by the Secretary of Labor (Gung You v. Nagle (C. C. A.) 34 F.(2d) 848, 851; Yee Mon v. Weedin (C. C. A.) 34 F.(2d) 266), and for that reason the order is affirmed.

Order affirmed