## HOM LAY JING v. NAGLE.*
### No. 6639.

Circuit Court of Appeals, Ninth Circuit.
April 4, 1932.

Russell P. Tyler, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and I. M. Peckham, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Appellant, a male Chinese 34 years of age, sought admission into the country as the foreign-born son of Hom Lim Mon (marriage name Hom *Yuey* Hon), a citizen of the United States, who is said to have died in China in April, 1923. Denied admission by the Immigration Authorities upon the ground that he had failed to establish satisfactorily the relationship claimed by him, appellant applied for a writ of habeas corpus to the District Court, which was denied. Hence this appeal.

The order of exclusion was based upon discrepancies in the testimony. Adverse features mentioned in the decision of the Board of Review and discussed herein relate to (1) the marriage name of appellant; (2) the family in the adjoining house; (3) the widow of the next door neighbor; (4) the children of appellant and of the alleged brother.

1. The record shows that appellant and his prior landed alleged brother are both married. They are 34 and 36 years of age, and their marriage names are Hom *Yuey* Jom and Hom *Yuey* Chong, respectively; that the marriage name of appellant's alleged father is Hom *Yuey* Hon. Both appellant and the alleged brother admit that the "generation character" in their names is the character *"Yuey."*

*Rehearing denied June 24, 1932.

H. K. Tang, an official Chinese interpreter in the immigration service for over 16 years, and formerly a school teacher in China for a number of years, testified that he knows Chinese customs, and that he never heard of succeeding generations having the same generation character in their marriage names.

Fung Ming, an official Chinese interpreter in the immigration service since 1906, testified that he is familiar with the Chinese custom in regard to marriage names; that the second character of the marriage name of a Chinese person indicates the generation to which he belongs; that the same character is not used as the second character of the marriage name in two successive generations; that the character *"Yuey"* in the Hom family is used to designate the twenty-first generation of the branch of the Hom family, and that the character "Moon" is used to indicate the twentieth generation of the same branch of the family.

Appellant claims that Hom *Yuey* Hon is his father, and gives his own marriage name as Hom *Yuey* Jom. He says that his alleged father had no generation character in his name, but merely adopted the character *"Yuey,"* and that in his father's name the character had no significance. The alleged brother, on the other hand, testified that the character *"Yuey"* in his father's name is the character which designates his father's generation, and that in appellant's name that character means nothing.

Such testimony, as was observed by the Board of Review, is "contradictory, inconsistent, and unconvincing. While it would seem that in a concocted case its fabricators would be clever enough to avoid the presenting of such adverse evidence, yet the fact seems to be that it is here presented. The marriage name alleged for this applicant appears definitely to indicate that he is of the same generation as his alleged father, which, of course, contradicts the claimed relationship."

2. In appellant's village there are only ten dwellings, two of which belonged to his alleged father. In 1916, when the alleged brother applied for admission, both he and the alleged father testified that the family occupying the house adjoining their own had two boys and no girls, and that these two boys were 20 years of age, and were twins. In the instant proceeding the alleged brother testified that this family has two sons who are not twins, but between whom there is a difference in age of 8 or 10 years, that said

family also has a daughter who was over 10 years in 1916 when the alleged brother came to the United States, and that at that time both the sons and the daughter were living in the house just between the old and the new house owned by appellant's alleged father. The witness insists his testimony in connection with the present application is correct, and that he and his alleged father were mistaken in 1916. The record shows that the witness always lived in his home village up to the time he came here in 1916, and in that same year the alleged father also had just returned from China.

Appellant also testified that his neighbor has two sons and a daughter; that the daughter is 30 years old; and that there is a difference in age between the two sons of 4 or 5 years.

A similar contradiction was shown in Toy Wing Yow v. Nagle, 24 F.(2d) 203, where this court said: "The discrepancies cannot be dismissed as unimportant. They went to the very crux of the appellant's claim of relationship to his alleged father, and were sufficient to justify its rejection by the officers whose duty it was to act in the premises. Said the court in Quock Ting v. United States, 140 U. S. 420, 11 S. Ct. 734, 851, 35 L. Ed. 501: 'He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story.'"

See, also, Weedin v. Lee Gock Doo (C. C. A.) 41 F.(2d) 129; Siu Say v. Nagle (C. C. A.) 295 F. 676; Tang Tun v. Edsell, 223 U. S. 673, 681, 32 S. Ct. 359, 56 L. Ed. 606.

3. The alleged brother testified that while he was in China from August, 1925, to January, 1928, and from November, 1929, until he returned to the United States with appellant, he stayed continuously in the home village; that the mother of the children, who lived in one of the alleged father's houses, mentioned in connection with the conflict discussed above, was dead when he arrived in China in 1925. Appellant testified that this woman is now living in the house which adjoins his own, and that he saw her there a week before he left the village for the United States. Such discrepancies are of the sort that tend to show that the appellant was not a member of the Hom family. Lee How Ping v. Nagle (C. C. A.) 36 F.(2d) 582; Toy Wing Yow v. Nagle, supra; Lim Wun v. Nagle (C. C. A.) 52 F.(2d) 396;

Louie Hing Fong v. Nagle (C. C. A.) 53 F.(2d) 739; Wong Wing Sin v. Nagle, 54 F.(2d) 321; Louie Lung Gooey v. Nagle (C. C. A.) 49 F.(2d) 1016.

4. This discrepancy relates to an ancient Chinese custom of shaving the heads of infants. Appellant's alleged brother testified that he has two sons, born in September, 1926, and October, 1927, respectively (he himself was in China from 1925 to 1928), and that appellant's younger son was also born while the witness was in China. He further testified that the heads of these three children were not shaved, and that the practice of shaving the heads of infants is no longer followed in his village.

Appellant testified that it has been the custom in his village to shave the heads of infants as long as he can remember, and further that the heads of these three infants were shaved in accordance with the custom.

Here is a conflict relating to family matters of recent occurrence, of which all should have had exact knowledge if the claimed relationship existed. Tse Yook Kee v. Weedin (C. C. A.) 35 F.(2d) 959.

An examination of the record shows that the appellant had a fair hearing, and the judgment is therefore affirmed.