## CHIN LUND v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 4, 1925.)

No. 4347.

1. **Aliens** ⊂⇒32(5)—**Burden of proof is on Chinese person asserting citizenship.**

In habeas corpus proceeding, Chinese person, asserting citizenship as son of resident Chinese merchant born in United States, has burden of proving such claim, and only if he sustains burden is he entitled to remain in United States.

2. **Aliens** ⊂⇒32(8)—**Evidence held insufficient to sustain Chinese person's claim to citizenship, but to show that he entered United States surreptitiously.**

In habeas corpus proceeding, evidence *held* insufficient to sustain claim of Chinese person that he was citizen as son of resident merchant born in United States, but to show that he entered surreptitiously.

3. **Aliens** ⊂⇒32(12)—**Rejection of surgeon's testimony, tending to disprove identity of Chinese as person who entered Canada, held nonprejudicial.**

Where evidence that Chinese person entered United States surreptitiously was sufficient, without his identification as person who entered Canada, rejection of surgeon's testimony tending to disprove such identification was nonprejudicial.

4. **Aliens** ⊂⇒32(12)—**Finding of District Judges that Chinese person was not citizen held entitled to great weight on appeal.**

Finding of two District Judges in habeas corpus proceeding that Chinese person was not citizen was entitled to great weight on appeal, and should not be lightly disturbed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Paul Jones, Judge.

Petition for habeas corpus by Chin Lund against the United States, to prevent execution of order for petitioner's deportation. The petition was denied, and petitioner remanded to custody of immigration inspectors, and he appeals. Affirmed.

J. B. Waterworth, of Cleveland, Ohio (Waterworth & Waterworth, and Wm. Waterworth, all of Cleveland, Ohio, on the brief), for appellant.

Irene Nungesser, Asst. U. S. Atty., of Cleveland, Ohio (A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, on the brief), for the United States.

Before DONAHUE, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Appellant is admittedly of Chinese descent. He claims that he was born in the United States of parents resident here, his father being a Chinese merchant, doing business in this country, and that appellant is thus entitled to the rights of citizenship. The government disputes this assertion, and claims that appellant was smuggled into the United States from Canada, and is thus here in violation of the immigration laws.

He was arrested at Silver Creek, N. Y., in February, 1919, was given a preliminary hearing before the immigration inspector at Buffalo, N. Y., on March 3, 1919, and a further hearing at the same place 12 days later. Having been released on bail, he was again arrested at Cleveland, April 1, 1919 (presumably without knowledge by the immigration authorities of the Buffalo arrest), and was again released on bail. Further hearings were had in Cleveland in May, 1919, and in March, 1920. Additional evidence was taken before the immigration authorities at Buffalo on March 1, 1921. On June 16, 1921, the Department of Labor ordered his deportation. September 20, 1922, the District Court below, Judge Westenhaver presiding, dismissed petition for habeas corpus. On appeal to this court the order of dismissal was reversed, for lack of jurisdiction in the Department of Labor to determine the question of appellant's citizenship, for the reason that the latter's claim thereof was supported by substantial evidence (though not believed by the department officers), and that appellant was thus entitled to a judicial, as distinguished from a departmental, hearing. Ng Fung Ho v. White, Com'r, 259 U. S. 276, 42 S. Ct. 492, 66 L. Ed. 938; Chin Lund v. United States (C. C. A.) 293 F. 750. The case was accordingly remanded to the District Court below for trial on the question of citizenship and for further proceedings. Such retrial was had in 1924, Judge Jones, who presided, reaching the conclusion that

appellant has failed to sustain his alleged citizenship by any rightful claim of legal residence in the United States, and is within the latter in violation of the immigration laws. The application for habeas corpus was accordingly denied, and appellant remanded to the custody of the immigration inspectors. This appeal is from the order last referred to.

[1] The case turns upon the question of fact whether appellant was born in the United States of parents so residing, and of a father so doing business, here. On this question the burden of proof is on appellant. Chin Bak Kun v. United States, 186 U. S. 193, 200, 22 S. Ct. 891, 46 L. Ed. 1121; Ng You Nuey v. United States (C. C. A. 6) 224 F. 340, 343, 140 C. C. A. 26; Woo Vey v. United States (C. C. A. 6) 242 F. 838, 840, 155 C. C. A. 426. If appellant has sustained this burden, he is entitled to remain; otherwise not. United States v. Wong Kim Ark, 169 U. S. 649, 18 S. Ct. 456, 42 L. Ed. 890; Woo Vey v. United States, supra.

[2] Appellant's claim is that he was born at San Francisco, September 8, 1902, at a given location in Chinatown; that about 3 years later he went with his parents and his uncle, Chin Doo, to Oakland, where they stayed 2 or 3 weeks, then to Kansas City, from which place, after 3 or 4 years' residence, his parents went to China, where they both died, leaving appellant with the uncle, who thereafter took care of him; that he lived at Kansas City until 1911, when appellant was about 8 years old, when the uncle removed to Cleveland, Ohio, where appellant continued to live until his arrest in 1919, having worked in restaurant and laundry for several years.

Appellant presents no birth certificate,[1] and no testimony as to his birth, except his own testimony and that of the alleged uncle, Chin Doo. Appellant's testimony as to the date and place of his birth has no persuasive force, even if competent at all—a question answered in the negative in Lee Sim v. United States (C. C. A. 2) 218 F. 432, 435, 134 C. C. A. 232. On his examination at Buffalo, March 3, 1919 (through an official interpreter, Chinese), he could not remember the year of his birth, but gave his age as "in the 30's," and there is testimony in the record (and Judge Westenhaver so believed) that appellant appeared to be of that age. This is in sharp contrast with his present claim that he was 16 years of age at the date of the examination in Buffalo. At that time he said he was born in California, and that both his parents were dead, and denied that he had ever been in Canada. He answered "I don't remember" to numerous questions, including the year in which he was born, the names of the towns in which he had worked as laundryman, how old he was when he left California, where he went from there, his father's name, his mother's name, when he last saw either of them, how long his parents had been dead, whether he was with them when they died, and said he did not remember going to school.

On his examination before the inspector on March 15, 1919 (through an official interpreter, white), he said he was 16 years old, and was born in San Francisco, on a street whose name he had forgotten, and made no answer whatever to numerous questions, including whether he had any documents or papers of any kind to substantiate his claim of birth in San Francisco, whether he could give the names of any persons who could testify that he was born there, where he got into the automobile in which it is claimed he was found at the time of his arrest, who was with him when he entered the automobile, or the place where he was looking for a job.[2] He had previously notified Chin Doo of his arrest, and the latter had sent Woo Foon (the Cleveland laundryman for whom appellan now claims to have worked for 2 or 3 years) to obtain counsel and bail. Appellant made no answer to the question whether he had ever before seen Woo Foon. It was not until after Chin Doo had testified, on March 2, 1920 (a year after the arrest), to the birth and family history now asserted, that appellant gave the street of his birth, the names of his father and mother, the former's business, and where appellant had worked in Cleveland, where he now claims he had been for about 6 years before his arrest. In his testimony on the second court hearing he said he had gone from San Francisco to Sacramento, and then to Oakland and Kansas City. His testimony does not impress us as straightforward, or as entitled to credit.

---

[1] See Lum Kim v. United States (C. C. A. 6) 225 F. at page 33, 140 C. C. A. 357, for reference to laws existing in 1902, requiring physicians and midwives to keep a registry of the time of each birth at which they assist professionally, the sex, race and color of the child. and the names and residence of the parents, a certified copy of the register to be filed quarterly with the county recorder. No duty in that respect seems to have been placed upon the parents before 1905.

[2] He claims to have been looking, with Chin Hoy, for a small place near Buffalo in which to start a laundry of their own.

The alleged uncle, Chin Doo (who testified in March, 1920), stated his relation to appellant, the place and date of the latter's birth, the removal to Kansas City, the subsequent deaths of the parents in China, and the continued residence of appellant with the uncle until the time of the former's arrest. As affecting the credibility of the witness, he testified on cross-examination that he had never appeared before the immigration office in Cleveland as a witness. Confronted with a copy of the minutes of an examination in 1911, and his admitted signature thereon, he could only say that he had forgotten about it, but that he had been to China but once, and had not made or testified to other visits. The admitted trip he says was made in 1902, which happens to be the year the witness and appellant now claim to have been that of appellant's birth, although no comment was made in the testimony on the identity of years.

Even in the absence of countervailing evidence, we think the testimony of appellant and Chin Doo—unsupported as it is by any one else even claiming acquaintance with or knowledge of appellant previous to 1910 or 1911 at the earliest—wholly insufficient to sustain the burden of proof of birth in this country. We are impressed, as both the District Judges seem to have been, that Chin Doo also was not entitled to belief in the face of the record presented here.

But the evidence that appellant entered the United States surreptitiously, as claimed by the government, impresses us as reasonably convincing. It is shown that appellant came to Silver Creek on February 28, 1919, in company with three Chinamen (Chin Hoy, now deceased, and originally associated with appellant in the deportation proceedings here in question, Louie Yick, and Ah Hong), together with a white man known as Murphy and a white woman, in an automobile which stalled a short distance before reaching Silver Creek. The theory of the government, that Ah Hong and Murphy were engaged in smuggling Chinese, finds apparent support in the record. Appellant and Chin Hoy were arrested at they were about to take the interurban car at Silver Creek for Dunkirk, N. Y. Appellant's claim that he had come from Buffalo in the interurban car (and not by the automobile in question) is, to our minds, refuted by testimony that because of interrupted car service appellant could not have come from Buffalo to Silver Creek on the interurban car asserted by him to have been used.

The government's claim of surreptitious entry is further supported by the stipulated testimony of two immigrant inspectors to the seeing (the one on February 13, 1919, the other February 24, 1919) of appellant at a named Chinese rooming house in Niagara Falls, Ontario, at which place, according to one of the inspectors, there were sometimes several hundred Chinese.

[3] The government also presented testimony tending to identify appellant as one Chan Gee On, who entered and registered at Victoria, British Columbia, November 4, 1918. Unless for one circumstance, this identification would seem reasonably convincing, supported, as it is, by the testimony of several witnesses, largely by way of comparison of appellant with a photograph shown to have been taken at the time of his entry. The circumstance referred to is that certain marks on the entrant's face, referred to in the inspector's certificate as "pits on left cheek, pit left nostril," though not shown in the photograph referred to, are not very definitely located on appellant's face, although there were apparently some chicken pox pits; also that the facial mark, "mole on right cheek," likewise not shown in the photograph referred to, does not appear at all on appellant's face; and the latter offered surgical testimony that the marks (we suppose the mole especially) could not have been removed without leaving scars. But the claimed identification with the Canadian entrant is by no means necessary to the conclusion that appellant has not sustained the burden of proving his birth in the United States. We accordingly reach our conclusion without reference to the claimed identification with the Canadian entrant. The complaint of the rejection of the surgical testimony becomes non-prejudicial for this reason, if for no other.

There are some other considerations, referred to in the opinions of the respective District Judges throwing discredit on appellant's claim of birth in this country. In view of what has been said, it is unnecessary to enumerate them. It is not without significance, as bearing upon the claimed birth, and the asserted several years' residence in Cleveland, that appellant spoke but little English, although he said he understood it pretty well, and, as remarked by Judge Westenhaver, in Cleveland, at least, the compulsory education laws would have required appellant's attendance upon school, unless his presence in the city had been successfully concealed from the school authorities.

The testimony presented by appellant of residence in Cleveland prior to 1919 remains to be considered. One white witness said he had known appellant since about the middle of 1917, another since about September, 1918, another as working for Woo Foon about three or four years until 1920, another as, since September, 1919. The distinction between these dates and December, 1919, presents too close a margin to be at all persuasive, in view of the attendant conditions. It certainly could not have the effect of overcoming the testimony otherwise, or of sustaining the burden of proof resting on appellant.[3] The testimony of at least one Chinese witness besides Chin Doo carries appellant's Cleveland residence back to about 1911; that of Woo Foon to about 1917.

[4] Appellant seems to have been accorded every opportunity to present his case. The record furnishes no reason for thinking that he has been overreached. Both District Judges reached the unqualified conclusion that he is not a citizen and is subject to deportation. These conclusions are entitled to great weight, and should not be lightly disturbed. Tom Hong v. United States, 193 U. S. 517, 522, 24 S. Ct. 517, 48 L. Ed. 772; Bak Kun v. United States (C. C. A. 6), 195 F. 54, 55, 115 C. C. A. 55. It is, of course, possible, that appellant's claim of citizenship is true, and we do not fail to appreciate the hardship of an unjust deportation, but we are unable to escape the conviction that appellant has failed to sustain the burden of proof that he is entitled to remain in the United States.

The order denying petition for writ of habeas corpus is affirmed.

---

[3] Judge Westenhaver said: "Eliminating the testimony of the petitioners (Chin Lund and Chin Hoy) and of these two alleged uncles, no evidence worthy of mention remains, except perhaps the testimony of Charles Finucan and W. O. Schaefer, both white witnesses. The former claims to have seen both of these Chinese persons at a laundry on 105th street. Schaefer's testimony is so indefinite and uncertain that it may be disregarded without comment. Finucan, if testifying truthfully and in good faith, is plainly and obviously mistaken."

Judge Jones, who saw and heard Finucan and Schaefer, as well as several Chinese witnesses, as to acquaintance with appellant in Cleveland, also appellant himself, said: "The above is substantially all of the testimony in behalf of the defendant, given orally at the trial, bearing upon the defendant's birth and residence in the United States prior to the time of his arrest. This testimony, like that of the defendant, taken before the immigration inspectors, was unsatisfactory, and not convincing. As a showing of citizenship and residence, the evidence was too vague and indefinite."