## CHIN SHARE NGING v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit.
August 20, 1928.

No. 5447.

**1. Officers ⬯110—Administratve officers' conclusions on issues of fact are invulnerable, unless unreasonable and arbitrary.**

Conclusions of administrative officers on issues of fact are invulnerable in courts, unless it can be said that they could not reasonably have been reached by fair-minded man, and hence are arbitrary.

**2. Aliens ⬯32(8)—Discrepancies in testimony held not unsubstantial, requiring affirmance of order excluding foreign-born son of alleged native-born father, for failure to establish relationship.**

In petition for habeas corpus by petitioner, claiming to be foreign-born son of native-born citizen, discrepancies in testimony between applicant and alleged father as to neighbors living near applicant's house in Chinese village, as to alleged father's travels while in China, and as to applicant's name at birth, and subsequent change, held not unsubstantial, requiring affirmance of order of exclusion, made on ground that evidence did not establish requisite relationship.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Petition for writ of habeas corpus by Chin Share Nging against John D. Nagle, as Commissioner of Immigration for the Port of San Francisco, Cal. From an order of the District Court, denying the writ and dismissing the petition, petitioner appeals. Affirmed.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from an order of the District Court denying a writ of habeas corpus and dismissing the petition therefor. The petitioner, a boy of Chinese descent, claims to have been born in China on September 12, 1911, and seeks admission to this country upon the ground that he is the foreign-born son of a native-born citizen of the United States. Upon a hearing, the immigration officers found that the alleged father, Chin Soon, is such resident citizen, but held the evidence insufficient to establish the requisite relationship. No unfairness or irregularity in the proceedings is charged, other than such as is implied in this holding.

[1] Testimony was given by the applicant himself, Chin Soon, and the latter's brother, Chin Fook Hong. It may be conceded, we think, that as a whole the testimony is so consistent, and the witnesses were in such accord, touching innumerable particulars, as to make it highly probable that they would have been given credit in a judicial tribunal. But considering the restricted range within which we are authorized to interfere with

administrative findings, we do not feel warranted in setting aside the order of exclusion. The law in such case is too well settled to require citation: The conclusions of administrative officers upon issues of fact are invulnerable in the courts, unless it can be said that they could not reasonably have been reached by a fair-minded man, and hence are arbitrary.

[2] Several discrepancies in the testimony are pointed out in the opinion of the Board of Special Inquiry, and, while some of them may perhaps be partially explained away, when taken together they cannot be said to be unsubstantial. The Ging Boy village, in which it is contended the applicant was born and reared, consists, according to the testimony, of only 15 dwellings, compactly arranged in 5 rows of 3 houses each, the whole inclosed by a bamboo hedge or stockade. Chin Soon made four visits to China, the last covering the period from 1921 to 1924, during which time he claims to have been in the village continuously. This being true, it would follow that his knowledge of the village should be reasonably accurate. The major discrepancies may be thus described:

(1) Upon inquiry the applicant testified that "opposite his big door" lived one Chin Bing Quai. He did not know of his having any other name. This man had a wife, but no children. He was sure Chin Bing Quai was living there when Chin Soon left in 1924, and when he, the applicant, left, to come to the United States.

In answer to similar questions put to him, Chin Soon testified that one Chin Ngow Jai, with his wife and two sons, the name of one of whom he gave, lived in that house, and that they were living there when he left for America in 1924.

(2) The applicant testified that "opposite his small door" lived Chin Sai Wing; that this man was 50 years old and had two sons and one daughter. With considerable detail he testified about this family, stating that the members thereof were living there at the time Chin Soon left, and also at the time he left for America.

27 F.(2d)—54

In answer to similar questions, Chin Soon testified that Chin Jee Chuey lived there; that Chin Jee Chuey himself was abroad, but that his wife and his son and daughter occupied the house, the names he gave them being different from the names given by the applicant, of the children of Chin Sai Wing.

(3) Inconsistencies quite as striking, although of different character, appear in the testimony of the two witnesses touching the occupants of the house in front of the home of Fook Hong, Chin Soon's brother.

(4) The applicant testified that in 1924, before Chin Soon returned to this country, he made trips to Canton and Hong Kong, and was gone "a few days" each time.

Chin Soon testified that during this visit he remained all the time in his home village, and that he made no visit to Canton or Hong Kong, or to any other place where he remained overnight.

(5) The applicant testified that there was only one entrance gate to the village; Chin Soon, that there were two, "one at the head and one at the tail."

(6) In giving testimony in 1914, Chin Soon mentioned a boy of the birth date now claimed by applicant, but called him Chin Wing Juck (or Jock). In the instant hearing he referred to the applicant as Chin Share Nging, and not otherwise. In answer to questions he at first stated that the applicant never had any other name; however, upon having his testimony of 1914 called to his attention, he recalled that Chin Wing Juck was the first name, but that he, Chin Soon, had been informed in 1915 that, because the child was sickly and cried much of the time, his (Chin Soon's) mother had named him Chin Share Nging. Then, upon being confronted with the fact that his mother had died in 1908, three years before the applicant was born, he stated that in giving his former answer he had meant his wife's mother. It is to be added that his brother, Fook Hong, who lived next door to the family in the home village, had never heard of any change of name.

The order is affirmed.