**JUE YIM TON v. NAGLE, Com'r of Immigration.**

No. 6291.

Circuit Court of Appeals, Ninth Circuit.

April 6, 1931.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Lucas E. Kilkenny, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a denial of a writ of habeas corpus in an immigration case. Petitioner sought entry into the United States as the foreign-born son of Jue Sam Teu, whose status as a citizen of the United States is conceded.

The question before the immigration authorities was to determine if the claimed relationship existed. Jue Sam Teu, the alleged father, was born in California, went to China at an early age, and returned to the United States in 1904. He made one subsequent trip to China 1910–11, and on his return stated that he had one son, Jue Fay Ton. The latter was admitted as the son of a citizen in 1921, and at that time the father stated that he had two other sons, Jue Yim Ton, the applicant, and his twin brother, Jue Wee Ton, who had been born after the alleged father's departure from China.

The question presented to this court is solely "whether the evidence submitted on the application for admission so conclusively established the alleged relationship that the order of exclusion should be held arbitrary or capricious." Jew Theu v. Nagle (C. C. A.) 35 F.(2d) 858, 859. The question is not whether this court, acting on the evidence submitted, might have found differently from the executive branch of the service; the question is whether or not the latter granted a fair hearing and abused their discretion. Tang Tun v. Edsell, 223 U. S. 673, 32 S. Ct. 359, 56 L. Ed. 606; U. S. v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040; Low Wah Suey v. Backus, 225 U. S. 468, 32 S. Ct. 734, 56 L. Ed. 1165.

The instant case must be distinguished from the case of Louie Poy Hok on behalf of Louie Fung Leung v. Nagle (C. C. A.) 48 F.(2d) 753, this day decided. In the latter case the claimed relationship was supported by at least seven entries on the records of the immigration service extending over a period of twenty years, by the fact that the alleged father had paid two extended visits to China and had lived in the same house with the applicant during those visits, and by the testimony of two previously entered brothers. In the instant case, the alleged father has never seen the applicant and identification by mutual recognition is impossi-

ble; there is only one entry on the immigration records concerning the existence of a son of Jue Yim Ton, the testimony that was made on the entrance of Jue Fay Ton in 1921. In the former case the records and the identification were as complete as one could possibly expect and offered substantial reasons for believing that the claimed relationship existed, and the discrepancies that were developed had to be viewed in that light; in the instant case the records and identification are not conclusive and the material discrepancies must be given a greater prominence in arriving at a decision.

The discrepancies on which the Board of Special Inquiry and the Secretary of Labor based their order in denying admission to the applicant were as follows:

The alleged brother, Jue Fay Ton, testified that the graves of three of the paternal ancestors, his paternal grandfather and his paternal grandparents, are located side by side with a space of about a foot between them; the applicant testified that his paternal grandfather's grave is alone and that there are no other ancestors of his buried near by.

The prior landed alleged brother testified that on his trip to China in 1925–26 he went a number of times with his brother, whom appellant claims to be, from the home village to the neighboring Lee Toon Market which was 1 li (654 yards) away from the home village; the applicant says that he never went to the Lee Toon Market with any one, and insists that until he started to the United States he never left his home village to go anywhere, even to the Lee Toon village, which was less than half a mile away. There are discrepancies with regard to the schoolhouse: The alleged brother testified that the schoolhouse where both of them attended had and has two entrances, dirt floors in all the rooms, and no skylights; the applicant testified that this schoolhouse had and has only one entrance, tile floors in all the rooms, and two skylights. It must be remembered that the previously landed alleged brother has not been. in China since 1926, and it is quite conceivable that the schoolhouse might have been changed in that time, but there is nothing introduced to show that such a change took place.

The prior landed alleged brother says that when he was in China on his last visit applicant and his twin brother slept in a room partitioned off from the sitting room where the paternal grandmother slept; applicant testified that while his alleged brother was last in China he slept with his mother and twin brother in the bedroom on the east side of the house, and that after his brother's marriage he slept in a loft in the parlor.

These discrepancies all have regard to domestic arrangements and to things within cognizance of members of the same family, they are matters commonly accepted as bases of questioning, and in the absence of more conclusive proof they are facts on which two brothers should be in accord if the alleged relationship is real.

In view of the fact, then, that there could be no mutual recognition between father and alleged son, that the relationship must be determined largely from the correlation of the testimony of the prior entered alleged brother and the applicant, and that serious discrepancies are developed therein, the findings of the immigration officials are not arbitrary and capricious.

The judgment of the lower court is affirmed.