## MUI SAM HUN v. UNITED STATES.

No. 7750.

Circuit Court of Appeals, Ninth Circuit.

July 9, 1935.

E. J. Botts, of Honolulu, T. H., for appellant.

Ingram M. Stainback, U. S. Atty., Willson C. Moore, Asst. U. S. Atty., and Ernest J. Hover, U. S. Dept. of Labor, all of Honolulu, T. H., and H. H. McPike, U. S. Atty., of San Francisco, Cal., for the United States.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

### GARRECHT, Circuit Judge.

This is an appeal from an order denying petition for writ of habeas corpus. Appellant, a person of the Chinese race, presented himself at the Port of Honolulu on July 27, 1934, for admission into the territory of Hawaii, claiming birth in the city of Honolulu on May 5, 1902, and departure therefrom, at the age of four years, with his mother, on February 13, 1906. After hearing by a board of special inquiry, composed of immigration officers, he was denied admission as an Hawaiian born citizen of the United States. Upon appeal, the Secretary of Labor affirmed the decision of the Board and appellant filed a petition for writ of habeas corpus, with the result above noted.

At the hearing before the Board of Special Inquiry, appellant and two others of his race testified. Appellant testified that he was thirty-two years of age; that he was born on May 5, 1902, in Hotel street, Honolulu; that he did not know the Chinese date of his birth; that his father told him the date; that his father, who was a farmer, died in Honolulu when appellant was two years old; that the father was forty years of age at the time of his death; that his mother's name was Jow Shee; that she took him to China on February 13, 1906, and that she was thirty-six years of age at the time; that she never returned to Hawaii; that he recalled nothing of the Hawaiian Islands; that he had never registered before the American Consul as an American citizen; that his mother settled in Lung Tow Wan village on her return to China because it was his paternal grandfather's village; that he did not know his father's village; that he thought his father was from Lung Tow village; that he, the appellant, attended school there and at another village; that his mother was still living; that she had bound feet. He further testified that he was married and had four children, but he was unable to give the year of his marriage or the years of the birth of his children; that he had seen two people in China who were from the United States—Lee Wai Shoon and Wong Wah Heen; that he desired his case to rest upon his testimony and upon the testimony of these two Chinese; that he met Lee Wai Shoon in China when the latter came to visit his mother in the early part of the preceding year and that the visit was of about ten minutes duration, taking place at 11 a. m.; that his mother told the visitor who he was; that Lee Wai Shoon had not met his wife, nor had he seen any of his children; that Wong Wah Heen had visited his mother several years before and that he met him on that occasion for about five or ten minutes; that this visit was at about 10 a. m.; that Wong Wah Heen had not met his wife nor seen any of his children. When shown an affidavit signed by one Mui Gum Yet, he stated that he did not know him and that he had never heard of him. He then stated that his mother told him that there was a man by that name living in Hawaii who had never been to China, and that he did not know him personally. He said that a photograph of himself, attached to the affidavit, had been taken the year before and that his mother had sent it to Mui Gum Yet and that the latter had never seen him, and had never had a copy of his photograph before.

Lee Wai Shoon, a native of China, sixty years of age, and who had first entered the territory in 1894, appeared as a witness. He testified that he had visited China between March and September in 1933; that the applicant was born on Hotel street in Honolulu, T. H.; that he knew Mui Sam Hun's father, a vegetable gardener who had died about thirty years previously; that Jow Shee took Mui Sam Hun to China with her when he was four years old and that he knew this because neighbors told him so when he was in China on his visit; that he had not see Mui Sam

Hun from the time he was a small child until the witness went to China the year before; that he saw the applicant once at his home, staying about ten minutes; that he was visiting at a house in his home village in China when Mui Sam Hun's mother came to the door and she was introduced and then led him to her house and he there met the applicant; that he saw the appellant but once; that he knew Mui Sam was the boy who was born in the territory because the latter's mother told him so. The witness was then interrogated regarding testimony given by him on the arrival of certain men from China several years before. He said that he could not remember the testimony given by him on those occasions, nor could he remember testimony given by him in other cases before the Board. He recognized appellant when the latter was brought before him.

Wong Wah Heen, also a native of China, who was sixty years of age and who had resided in the territory for over forty years, was called as a witness. He testified that he had recently visited China, leaving Hawaii in March, 1932, and returning in January, 1933; that Mui Sam Hun was the son of Mui Ow Gut, who was a truck gardener and whom he knew in Honolulu thirty or forty years before; that Mui Ow Gut had died thirty years previously in Honolulu, at about forty years of age; that Jow Shee was Mui Ow Gut's wife; that she had bound feet; that she returned to China at the age of thirty-five years; that he knew her age when she returned to China because she had told him so when he was on his visit there; that Mui Sam Hun was thirty-two years of age; that he was taken to China when he was four years old; that the witness knew this because Mui Sam Hun's father died when the latter was two years old and he knew him at that time; that he remembered these things because applicant's mother told him on the occasion of a visit to her house in China; that he was unable to identify Mui Sam Hun as the person claimed to have been born in Hawaii, but that Mui Sam's mother told him; that he saw the applicant but once for about ten minutes; that all he knew about the applicant was that a boy of the same name was born in Honolulu and went to China at the age of four years and what he was told by the applicant's mother. He identified a photograph of the appellant. He further testified that he knew Mui Gum

Yet; that Mui Gum Yet was probably on the Island of Molokai; that Mui Gum Yet knew the applicant; that he could not be secured as a witness because he was an itinerant; that the witness did not know where Mui Gum Yet was located. When asked if he remembered the testimony he gave on prior occasions when he had acted as a witness in behalf of his countrymen before the Board, he said that he did not remember—that he was too aged. The following then took place:

"Q. How do you remember these particular facts you are relating in this case? Has your mind been refreshed lately? A. Because this is only minor.

"Q. Isn't this just as important as the cases in which you testified in times gone by? A. The mother told me that was her son and I testified accordingly.

"Q. Are you positive you have never seen this applicant other than on one occasion and that for about ten minutes only? A. Yes."

Following this the question was asked:

"Q. Then do we understand you to say that all you know about this case is that a boy was born in Honolulu many years ago, taken back to China when a small boy by his mother, and whom you saw for about ten minutes on one occasion several years ago, at which time you were told by his alleged mother that he was the boy you knew was born here; is that substantially correct? A. Yes."

The applicant was recalled and asked:

"Q. You have given the exact date of departure for yourself and your alleged mother when you were four years old; are you able to give the dates of arrival of your parents from China into Honolulu? A. No."

Each of appellant's witnesses was asked at the time of his re-entry into the territory on return from China the following question, "Q. Did you see any resident or former resident of this country during your recent stay in China?" and each answered, at the time, "No." When confronted with this, one witness said that he forgot to mention it, and the other said he was not asked the question, or that if he was asked, he did not hear it.

The outgoing manifest of the steamship Mongolia, sailing from Honolulu on February 13, 1906, contained the names of Mrs. Mui, age thirty-five years; female;

occupation wife; destination Hong Kong, and Sam Hun, age four; male, born in Hawaii; destination Hong Kong.

The "affidavit of Mui Gum Yet to facilitate entry of Sam Hun Mui at the Port of Honolulu," referred to above, recited that the affiant was acquainted with Sam Hun Mui who was born in Honolulu and who is now a resident of Leong Tow Yun village, Canton, China; that the said Sam Hun Mui is a citizen of the United States by virtue of his birth in the territory of Hawaii in 1902; that the attached photograph is a good likeness of Sam Hun Mui as of the present day; and that the affidavit was made for the purpose recited in the title. It will be observed, with reference to the photograph being a likeness of Mui Sam Hun, that the applicant said he had never seen Mui Gum Yet.

We have gone into the facts with some particularity for the reason that the sole question involved is whether the action of the Board in denying the applicant admission was arbitrary and unfair. If the Board acted fairly, the court below did not err in denying the writ.

It is noted that the applicant said his father told him the date of his birth, but his father died when he was two years of age; that the affidavit to facilitate his entry into the United States was made by a man whom he had never seen, although the affiant stated that the attached photograph was a good likeness of the applicant; that the maker of the affidavit was not produced and that they did not know his exact whereabouts because he was an itinerant; that it was with difficulty that the Board elicited from the applicant the home village of his father; that he was unable to give the year of his marriage or the year of birth of any of his children; that he said Lee Wai Shoon called at his house in China to visit his mother "who was his friend," although Lee Wai Shoon said that the mother was introduced to him and brought him to her house.

"A person of Chinese descent claiming the right to enter the United States as a citizen is not entitled to a judicial hearing on the issue of his citizenship. The determination of this question rests with the immigration officials, and, if they accord a fair hearing and reach a decision not utterly arbitrary, their finding is conclusive." United States v. Day, 54 F.(2d) 990, 991 (C. C. A. 2). See, also, Lee Hing v. Nagle, etc., 295 F. 642 (C. C. A. 9), af-firming Ex parte Lee Soo (D. C. Cal.) 291 F. 271.

The rule is not, as appellant contends, that the applicant need only make out his case by a fair preponderance of the evidence, for it is not incumbent upon the government to offer any evidence whatsoever. Rather, the burden is upon the applicant to prove his right to admission and the Board is the sole judge of credibility of the witnesses, and its finding will not be disturbed without a showing that the hearing was unfair and unreasonable, or that the finding was arbitrary or capricious. The weight of the evidence and the credibility of witnesses is not for us, but for the Board.

"The case turns upon the question of fact whether appellant was born in the United States of parents so residing. * * * On this question the burden of proof is on appellant." Chin Lund v. U. S., 9 F.(2d) 283, 284 (C. C. A. 6). The burden is upon him because he has the best means of proving the fact. United States v. Chun Hoy, 111 F. 899, 902 (C. C. A. 9).

"The question presented to this court is solely 'whether the evidence submitted on the application for admission so conclusively established the [fact in issue] that the order of exclusion should be held arbitrary or capricious.' * * * The question is not whether this court, acting on the evidence submitted, might have found differently from the executive branch of the service; the question is whether or not the latter granted a fair hearing and [sic] abused their discretion. * * *" Jue Yim Ton v. Nagle, 48 F. (2d) 752 (C. C. A. 9). "And if it does not affirmatively appear that the executive officers have acted in some unlawful or improper way and abused their discretion, their finding upon the question of citizenship must be deemed to be conclusive, and is not subject to review by the court." Tang Tun v. Edsell, 223 U. S. 673, 675, 32 S. Ct. 359, 361, 56 L. Ed. 606. "The conclusions of administrative officers upon issues of fact are invulnerable in the courts, unless it can be said that they could not reasonably have been reached by a fair-minded man, and hence are arbitrary." Chin Share Nging v. Nagle, 27 F.(2d) 848, 849 (C. C. A. 9). See, also, Chin Wing v. Nagle, 55 F.(2d) 609, 611 (C. C. A. 9); Haff v. Der Yam Min, 68 F.(2d) 626 (C. C. A. 9).

Appellee cites cases to the effect that the testimony of the applicant as to his birthplace is not competent evidence because "he could not possibly know the fact." Lee Sim v. U. S., 218 F. 432 (C. C. A. 2); Ark Foo v. U. S., 128 F. 697 (C. C. A. 2); Ex parte Chin Him, 227 F. 131 (D. C. N. Y.). But this court has said, "The testimony of the witness as to the date and place of his birth is, of course, hearsay, but it is competent." United States v. Wong Gong (C. C. A.) 70 F.(2d) 107. However, the question of the credibility is for the executive department. The Board had the applicant and his witnesses before it. "It is no indication of unfairness that his testimony was not credited. * * * In United States ex rel. Tisi v. Tod, 264 U. S. 131, 44 S. Ct. 260, 68 L. Ed. 590, the court said: 'The Secretary of Labor was not obliged to believe this testimony. The government did not introduce any direct evidence to the contrary.'" Wong Fat Shuen v. Nagle, etc., 7 F.(2d) 611, 612 (C. C. A. 9).

In view of the discrepancies above noted and of the fact that Mui Gum Yet was not produced and that the corroborating witnesses' testimony was based upon hearsay, we cannot say that the conclusion reached by the Board could not reasonably have been reached by fair-minded men.

Order affirmed.