**MORIKICHI SUWA v. CARR, District Director, United States Immigration Service.**

**No. 8156.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 15, 1937.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Howell Purdue, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

Morikichi Suwa, the appellant herein, was apprehended July 12, 1934, a short distance east of Calexico, Cal., on the north bank of an irrigation canal which runs parallel to the International boundary fence between the United States and Mexico and a few feet to the north thereof. The canal at this point was approximately 15 feet wide and the water therein about one foot deep. Close by the point of arrest were two holes in the International fence. The inspector who made the arrest did not see the alien climb through the fence or effect his entry, although he had been on duty for half an hour, but he did state that no one could have approached the canal from the north, without being seen by him. The inspector saw the alien climb the north bank of the canal from the south and found that the alien's feet and trousers were wet. He also testified that from where he was stationed and from where a fellow officer was stationed it was possible to keep watch over the only two holes in the International fence in that locality;

that no one could cross the north bank in that vicinity without being seen by him; that he arrived at his post at about 7:45 p. m. and apprehended the alien at 8:15 p. m.

Appellant was a native of Japan and the evidence disclosed that he had made a prior entry into this country at San Pedro, Cal., in January, 1924, en route to Mexico; that he entered Mexico and remained there until April, 1924, when he crossed the border on foot near Calexico, not a designated port of entry and without having complied with the regulations prescribed for legal entry into the United States. It further appeared that he had resided in the United States since that time, up until his arrest; and that he had resided in Los Angeles, Santa Ana, Inglewood, Imperial, and Heber, Cal., working as a gardener and farmer.

In addition to the immigration officer, one Setsuo Imamoto, the operator of a beer parlor in Mexicali, Mexico, appeared for the government as a witness. He testified that he directed a person, whom he identified as Suwa, to the home of the Secretary of the Japanese Association in Mexicali, Mexico, at 7 a. m. on July 12, 1934. One Saburo Yoshizaki was called as a witness and testified that he was Secretary of the Japanese Association at Mexicali, but was unable to exactly identify the alien, saying, "I think I saw him, but don't remember very exactly."

Having in mind that the town of Heber is located about 8 miles south of El Centro and 6 miles north of Calexico, and that Calexico and Mexicali are adjoining towns situated on the border, Calexico being in the United States and Mexicali in Mexico, we proceed to set out the appellant's testimony. The appellant testified that he had left the ranch or farm near Heber shortly after 5 p. m. on July 12, 1934, by automobile, with another Japanese; that they proceeded to El Centro, where they separated; that he gave the keys to his car to his employer, another Japanese; that he then secured a ride in an automobile operated by a Mexican whom he did not know and who was driving to Calexico or Mexicali; that he got out of the car within one block of the place where he was arrested, intending to walk into Mexicali, Mexico, and later to return; that he then walked to the canal, took off his shoes and attempted to wade across, but slipped and wet his trousers; that he then abandoned this pro-jected journey without having completely crossed the canal and returned to the north bank of the canal and immediately thereafter he was apprehended.

Suwa was taken into custody and remained in jail several days. While he was in jail Imamoto was brought to see him and was introduced to him.

Other witnesses appeared for the alien, some of whom testified to seeing him as late as 5 o'clock on the afternoon of July 12, 1934. Another told of Suwa having worked for his father near Santa Ana, Cal., in 1924. This witness produced a diary which substantiated his testimony in this regard. On this point, he was also in agreement with the alien, so it may be taken as established that the appellant actually entered the country in 1924. However, such entry was illegal.

After hearing to show cause, deportation of the alien was recommended and the case was brought before the Board of Review for consideration, after which deportation was again recommended, which was ordered by the Second Assistant Secretary of Labor. The alien filed a petition for writ of habeas corpus in the court below, which was denied; hence this appeal.

There are two specifications of error urged by the appellant: First, that the court erred in holding that there was some evidence to support the warrant of deportation, in that all the evidence adduced demonstrated that the appellant had resided continuously in the United States since April, 1924; and, second, that the court erred in holding that the appellant had been given a fair hearing before the Immigration Service.

As to the first specification of error, the government does not dispute the fact that the appellant may have entered the United States prior to July 1, 1924, before the effective date of the Act of May 26, 1924 (43 Stat. 162, § 14, 8 U.S.C.A. § 214) and that if he had entered the country before July 1, 1924, the statute (Act Feb. 5, 1917, § 19, 39 Stat. 889, 8 U.S.C.A. § 155) had run in his favor so that he could not be deported on the ground of unlawful entry in the first instance. Masamichi Ikeda v. Burnett, 68 F.(2d) 276 (C.C.A.9); Takaji Mukai v. Burnett, 62 F.(2d) 355 (C.C.A.9); Ohara v. Berkshire, 76 F.(2d) 204, 205 (C.C.A.9).

But the government insists that the appellant after having theretofore left the country, did, on the night in question,

effect an unlawful entry into the United States. Although he may have lived continuously in the United States from April, 1924, until the day of his arrest, and no matter how brief his visit to the foreign country may have been his entry would, in the circumstances, be unlawful in that the immigration law was not complied with. Cahan v. Carr, 47 F.(2d) 604, 605 (C.C.A.9).

It is fundamental that in proceedings of this kind the weight of the evidence and the credibility of witnesses rests solely with the Board and that the courts have no right to set aside any ruling of the Board merely upon taking a different view of the evidence. Masamichi Ikeda v. Burnett, supra.

The appellant urges, as ground for reversal, that the Board of Review misstated the facts in one or two particulars in its summary of the case. Unless it can be held that the immigration authorities acted arbitrarily in rejecting appellant's evidence, "it is immaterial that the Board of Review may have been influenced in so doing by the erroneous impression or recollection of the evidence taken before the inspector." Masamichi Ikeda v. Burnett, supra, 68 F.(2d) 276, at page 277.

One witness positively identified the appellant as having been in Mexicali on the day in question; the officer testified that no one could come from the direction from which the appellant claimed to have come, without being seen. Close by the place where the arrest was made were two holes in the International fence; and appellant was seen coming from the direction of Mexico. True, appellant's witnesses told a different story, one which at the time the government witness locates him in Mexico, placed him on the ranch at Heber, Cal., as late as 5 p. m. of that day, and at a still later time in El Centro. This conflict of testimony required a weighing and balancing of the evidence, a function not for this court, but for the administrative officers. Moreover, the officers were not obliged to believe Suwa's testimony, nor to give credence to evidence they believed to be inherently improbable.

In Mui Sam Hun v. United States, 78 F.(2d) 612, 615, we said: " 'The question presented to this court is solely "whether the evidence submitted on the application for admission so conclusively established the (fact in issue) that the order of exclusion should be held arbitrary or capricious." * * * The question is not whether this court, acting on the evidence submitted, might have found differently from the executive branch of the service; the question is whether or not the latter granted a fair hearing and [sic] abused their discretion. * * * *' Jue Yim Ton v. Nagle, 48 F.(2d) 752 (C.C.A.9). 'And if it does not affirmatively appear that the executive officers have acted in some unlawful or improper way and abused their discretion, their finding upon the question of citizenship must be deemed to be conclusive, and is not subject to review by the court.' Tang Tun v. Edsell, 223 U.S. 673, 675, 32 S.Ct. 359, 361, 56 L.Ed. 606. 'The conclusions of administrative officers upon issues of fact are invulnerable in the courts, unless it can be said that they could not reasonably have been reached by a fairminded man, and hence are arbitrary.' Chin Share Nging v. Nagle, 27 F.(2d) 848, 849 (C.C.A.9)."

And again, in Whitty v. Weedin, 68 F.(2d) 127, 130, we said: "The point to be determined by us is whether the appellant had a fair hearing, and, if it appears from the record that he had, we are not at liberty to disturb the decision of the lower court. The truth of the facts is for the determination of the immigration tribunals, and where its procedure and decision are not arbitrary or unreasonable, and the alien has had a fair hearing, the result must be accepted." See, also, Keizo Kamiyama v. Carr, 44 F.(2d) 503, 505 (C.C.A.9).

The order of the District Court is affirmed.